Filed 10/6/20  P. v. Gonzalez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>LUIS GUSTAVO GONZALEZ,<br><br>  Defendant and Appellant. | B291005<br><br>(Los Angeles County<br> Super. Ct. No. BA450970)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>NO CHANGE IN THE APPELLATE JUDGMENT |

THE COURT:

The above-entitled opinion filed on September 16, 2020 is modified as follows:

On page 24, first paragraph, lines 7 and 8, after the sentence, "Thus, Gonzalez forfeited his challenge," add a new footnote 7 as follows:

Gonzalez contends his attorney's failure to object to imposition of the fines and fees was ineffective assistance of counsel. However, Gonzalez's attorney may have decided not to object because an objection would be futile in light of Gonzalez's long sentence and the amount of the fines and fees. (See *People v. Caro* (2019) 7 Cal.5th 463, 488 ["On direct appeal, if the record "'sheds no light on why counsel acted or failed to act in the manner challenged,'" we must reject the claim "'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.'"'"]; *People v. Mickel, supra,* 2 Cal.5th at p. 198 ["[A] reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ""no rational tactical purpose"" for an action or omission."].)

Appellants' petition for rehearing is denied. There is no change in the appellate judgment.

---

PERLUSS, P. J.        SEGAL, J.        FEUER, J.

Filed 9/16/20  P. v. Gonzalez CA2/7 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B291005 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA450970) |
| v. | |
| LUIS GUSTAVO GONZALEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David V. Herriford, Judge.  Affirmed in part; reversed in part.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Luis Gustavo Gonzalez appeals from a judgment entered after the jury convicted him of continuous sexual abuse and sodomy of his girlfriend's sister, Alicia P., and lewd act upon a child, Alicia's cousin Jennifer C. At the time of the sexual abuse, both Alicia and Jennifer were under the age of 14. The jury also found true Gonzalez committed offenses against multiple victims.

On appeal, Gonzalez contends the prosecutor committed misconduct in her closing argument by asserting the jury could consider statements made by prospective jurors about how their family members or friends had delayed reporting sexual abuse as evidence that sexual abuse victims may delay reporting sexual abuse out of fear. In addition, Gonzalez challenges the constitutionality of Penal Code[1] section 288.5 for continuous sexual abuse and argues his conviction should be reversed because there is not sufficient evidence the abuse continued over a period of three months. Gonzalez also contends, the People concede, and we agree Gonzalez's conviction of sodomy must be vacated because he also was convicted of continuous sexual abuse against the same victim during the same time period. But we reject Gonzalez's argument the trial court's failure sua sponte to instruct the jury that he could not be convicted on both counts requires reversal of both counts. Finally, Gonzalez argues his case should be remanded for the trial court to conduct an ability-to-pay hearing on the court assessments, restitution fines, sex offender fine, and victim restitution ordered by the court, relying on this court's opinion in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

---

[1] All further undesignated statutory references are to the Penal Code.

2

We strike Gonzalez's conviction of sodomy and affirm the judgment as modified.  We also conclude Gonzalez forfeited his challenge to imposition of the court assessments, restitution fines, and sex offender fine, and the trial court properly did not consider Gonzalez's ability to pay victim restitution.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Information*

The information charged Gonzalez with continuous sexual abuse of a child under the age of 14 between January 1, 2010 and January 1, 2011 (§ 288.5, subd. (a); count 1); sodomy of a person under the age of 14, who was more than 10 years younger than the defendant, between January 1, 2010 and January 1, 2011 (§ 286, subd. (c)(1); count 2); sexual penetration by a foreign object by force (§ 289, subd. (a)(1)(A); count 3)[2]; and lewd act upon a child under the age of 14 (§ 288, subd. (a); count 4).  Counts 1, 2, and 3 were charged as to Alicia; count 4 was charged as to Jennifer.  The information specially alleged as to all counts Gonzalez committed the offenses against more than one victim (§ 667.61, subds. (b) & (e)(4)).

Gonzalez pleaded not guilty and denied the special allegations.

---

[2]    Upon the prosecutor's motion, the court dismissed count 3 after the close of the prosecution's case.

B.    *The Prosecution Case*

   1.    *Alicia's testimony (counts 1 and 2)*

   In 2010 then-11-year-old Alicia (born October 1998) stayed with her older sister, Teodora Munoz, on most weekends and some weekdays.  Munoz lived with then-25-year-old Gonzalez, who was her boyfriend.  Gonzalez took Alicia and her siblings places and bought them food and gifts.

   One weekend in the Spring of 2010 Alicia stayed overnight at Munoz and Gonzalez's house on Eagle Street.  Alicia fell asleep on a sofa in the bedroom while Munoz and Gonzalez slept in the bed in the same room.  Alicia was asleep on her side when she awoke to find Gonzalez pulling down her jeans.  Gonzalez then lowered Alicia's panties and inserted his penis into her anus for approximately a minute.  It was painful, but Alicia stayed still and pretended to be asleep because she "didn't think it was good to scream."  Alicia was scared because "she knew it was not right."  Gonzalez then pulled Alicia's jeans back up and returned to the bed where Munoz was asleep.  Alicia cried and went back to sleep.

   The next day Alicia was in pain and had difficulty walking.  When Alicia went to the bathroom and wiped herself, she noticed she was bleeding.  Munoz asked Alicia why she was limping, and Alicia replied she "slept wrong."

   The second incident occurred "probably weeks," but less than a month later in another home where Munoz and Gonzalez were living.  Alicia was asleep in bed with Gonzalez and Munoz when Gonzalez touched Alicia's vagina under her panties and inserted his fingers inside Alicia's vagina.  He stopped when Munoz moved in her sleep, then he started again.

4

Gonzalez digitally penetrated Alicia's vagina "every night when [she] would sleep over" at Gonzalez and Munoz's home in 2010. She added the abuse occurred "every Saturday or Sunday," on more than 20 separate occasions. Gonzalez and Munoz moved frequently, and the incidents occurred "mostly in every place they moved in." The sexual abuse stopped when Alicia was placed in foster care during her "last year of elementary school going into middle school." When asked whether she would have been 12 or 13 years old at the time, Alicia replied, "Maybe."

Alicia did not report Gonzalez's abuse because she was afraid no one would believe her and she wanted to "erase what happened." Alicia added, "I didn't want to say nothing until my cousin [Jennifer] told me what had happened to her and I did not like it." Alicia then told her aunt Angela (Jennifer's mother) about Gonzalez's abuse. In 2014 or 2015 Alicia went to the police station and reported Gonzalez's sexual abuse of her.

2. *Jennifer's testimony (count 4)*

During 2013 then-12-year-old Jennifer often slept at the home of Munoz and Gonzalez on weekends because she felt close to them. Gonzalez was like a father to Jennifer. When Jennifer stayed with Gonzalez and Munoz, Gonzalez took Jennifer to see movies, and they would eat pizza and popcorn. At the time Munoz and Gonzalez lived in a converted garage, which was furnished with a bed, television, and refrigerator.

On the afternoon of May 20, 2013 Jennifer, Munoz, and Gonzalez were sitting on the bed watching television when Munoz left the garage to use the bathroom that was outside the garage. Jennifer started to follow Munoz because she did not want be alone with Gonzalez. But when Jennifer asked Gonzalez

5

if she could go with Munoz, he said no and asked her, "[H]ow much do you want[?]" Jennifer did not understand what he meant, so she did not respond. She went back to the bed and lay down on her back. Gonzalez reached under her clothes and touched her vagina. Jennifer was scared and pretended to fall, rolling off the bed. She started crying while lying on her stomach with half of her body under the bed. When Munoz came back, she asked Jennifer why she was crying, but Jennifer continued to cry and did not answer. When Munoz asked Gonzalez, he replied, "I don't know. She just started crying." After Jennifer and Gonzalez fell asleep, Munoz woke Jennifer up to ask her what happened. Jennifer did not want to tell Munoz what happened because she "thought [Munoz] wasn't going to believe [her]." When Jennifer told Munoz that Gonzalez had touched her vagina, Munoz responded, "How can he do that if he's like your dad[?]"

When Jennifer returned home, she did not tell her mother because she was afraid Gonzalez would kill her mother in light of his previous comment to Jennifer that he had guns. A couple of months later, Jennifer told her uncle when she stayed with him in Colorado. Jennifer's uncle informed her mother, who contacted the police.

C.    *The Defense Case*

Munoz testified she started dating Gonzalez when she was 15 and he was 24 years old. Munoz had never seen Gonzalez with a gun. When Munoz and Gonzalez lived on Eagle Street, Alicia stayed overnight one time. Munoz denied hearing any odd sounds or crying during the night. According to Munoz, Alicia

6

did not have a limp the next morning, and Alicia did not tell Munoz she was in pain because she slept wrong.

In 2012 Munoz lived with Gonzalez in a converted garage with no kitchen or bathroom. Jennifer and her family visited Munoz there during the day, but Jennifer never stayed overnight. In 2013, when Munoz and Gonzalez moved to another apartment, Jennifer visited twice but did not stay overnight. Jennifer once spent a night with Munoz and Gonzalez when they rented a room in a house on Fetterly Avenue. Munoz slept in the middle of the bed with Jennifer to her left and Gonzalez to her right. When Jennifer cried in her sleep, Munoz woke her up and asked what was wrong. Jennifer told Munoz her stepfather had touched her private parts.

D.    *The Verdicts and Sentences*

The jury found Gonzalez guilty of the continuous sexual abuse of Alicia, who was under the age of 14 (§ 288.5, subd. (a); count 1); sodomy of Alicia, who was under the age of 14 and 10 years younger than Gonzalez (§ 286, subd. (c)(1); count 2); and lewd act upon Jennifer, who was under the age of 14 (§ 288, subd. (a); count 4). As to each count, the jury found true Gonzalez committed offenses against more than one victim.

The trial court sentenced Gonzalez on count 1 for continuous sexual abuse and on count 4 for lewd act on a child to indeterminate terms of 15 years to life on each count based on the multiple victim circumstance under the one strike law (§ 667.61, subds. (b) & (e)(4)). The court ordered the sentence on count 4 to run concurrent with the sentence on count 1. On count 2 for sodomy of a person under the age of 14, the court imposed the

7

middle term of six years, but stayed it pursuant to section 654.[3] The court imposed a $30 court facilities assessment (Gov. Code, § 70373) and a $40 court operations assessment (Pen. Code, § 1465.8, subd. (a)(1)) on each count; a $300 sex offender fine (*id.*, § 290.3)[4]; and a $300 restitution fine (*id.*, § 1202.4, subd. (b)); and it imposed and suspended a $300 parole revocation restitution fine (*id.*, § 1202.45). The court also ordered restitution to the Victim Compensation Board, by stipulation of the parties, in the amount of $2,700 plus 10 percent interest (*id.*, § 1202.4, subd. (f)(2)). The court found Gonzalez did not have the ability to pay attorneys' fees. Gonzalez did not object to imposition of the assessments and fines or raise his inability to pay.

Gonzalez timely appealed.

## DISCUSSION

A.    *Gonzalez Forfeited His Claim of Prosecutorial Misconduct, and He Failed To Show Prejudice*

Gonzalez contends the prosecutor, Emily Spear, committed misconduct by asserting in her closing argument the jurors should consider the statements by prospective jurors about how their family members and friends had delayed reporting sexual abuse out of fear. We agree this argument was highly improper, but the error was harmless.

---

[3]    The trial court dismissed the multiple-victim allegation as to count 2.

[4]    The trial court only imposed the sex offender fine on count 1, although the statute provides for imposition of the fine on each conviction. (§ 290.3, subd. (a).)

### 1. *Closing arguments*

During her closing argument, defense counsel argued, "[Munoz] also told you that when Jennifer was found crying at night, [Munoz] asked Jennifer why she was crying. And she told [Munoz] that her stepfather had been touching her in similar ways. And yet time went on and nothing was said; nothing was reported for years after that. [¶] Now, we all listen to the news, and we know that sometimes people don't report these things. But the key factor here is that neither of these girls reported to anybody their touching until they talked to each other. And all of a sudden now, they want to come forward and support each other's stories. [¶] . . . [¶] If you just don't believe these girls and if you think about it and their stories don't make sense, then you must vote not guilty."

In her rebuttal argument, the prosecutor referenced comments made by prospective jurors during voir dire. The prosecutor argued, "[A]dmittedly, it's weird that [Alicia and Jennifer] didn't report right away. But I want you to think back to jury selection. Think about every person that we heard from— and there were quite a few—who said their wife or their mother or their friend didn't report. [¶] They didn't report because they were terrified. They didn't do anything during the act itself. They didn't tell anybody about it for years and years and years. They didn't tell anyone until they told their spouse. I mean, I can't count how many people we heard that type of information from. [¶] So even in our real lives and our common sense, we know that these types of crimes are under-reported. [¶] These little girls get scared, worried that no one's going to believe them, which we heard from the stands, and we also heard in the jury box. They get worried that someone's going to get hurt if they

9

report, which we heard from the stands and we heard from our fellow jurors.  [¶]  They avoid during the act as they're frightened that they don't want to speak up about it.  We've heard that from the jury box, and we've heard that from our fellow jurors.  [¶] Ladies and gentlemen, that is the strongest evidence you have as to why they didn't report right away.  Our fellow jurors gave us that information.  And you can use that in evaluating this case."

### 2. *Gonzalez forfeited his claim of prosecutorial misconduct*

"""As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.""" (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 657; accord, *People v. Hoyt* (2020) 8 Cal.5th 892, 942.)  "'The lack of a timely objection and request for admonition will be excused only if either would have been futile or if an admonition would not have cured the harm.'" (*Hoyt,* at pp. 942-943; accord, *People v. Powell* (2018) 6 Cal.5th 136, 171.) Gonzalez's failure to object to the prosecutor's argument that the jury should consider statements by prospective jurors forfeited his claim of prosecutorial misconduct.  (See *Hoyt*, at p. 942 [defendant "failed to object to nearly all such instances [of prosecutorial misconduct during his closing argument] and has therefore forfeited these claims on appeal"].)

Had Gonzalez's attorney objected, the trial court could have instructed the jury that prospective jurors' comments during voir dire are not evidence.  Further, the court could have reminded the jury, as it had instructed, that the attorneys' closing

10

arguments were not evidence, and they should only consider the witness testimony and exhibits as evidence.

  3.  *Gonzalez has not shown prejudicial error*

Even had Gonzalez not forfeited his claim of prosecutorial misconduct, he has not met his burden to show prejudicial error.[5] "'"A prosecutor commits misconduct when his or her conduct either infects the trial with such unfairness as to render the subsequent conviction a denial of due process, or involves deceptive or reprehensible methods employed to persuade the trier of fact."'" (*People v. Beck and Cruz, supra*, 8 Cal. 5th at p. 657; accord, *People v. Hoyt, supra*, 8 Cal.5th at p. 943.) "'"A defendant's conviction will not be reversed for prosecutorial misconduct, however, unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct."'" (*People v. Young* (2019) 7 Cal.5th 905, 932-933; accord, *People v. Tully* (2012) 54 Cal.4th 952, 1010.)

Spear committed prosecutorial misconduct by arguing to the jury it could consider the prospective jurors' statements made during voir dire as evidence that victims of sexual abuse

_____

[5]   Gonzalez argues ineffective assistance of counsel to avoid forfeiture, but this claim likewise fails because he does not show his attorney's failure to object was prejudicial. (*People v. Rices* (2017) 4 Cal.5th 49, 80 ["'"To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant."'"]; *People v. Mickel* (2016) 2 Cal.5th 181, 198 [same].)

11

commonly delay reporting the abuse out of fear. "It is well settled that it is misconduct for a prosecutor to base argument on facts not in evidence." (*People v. Mendoza* (2016) 62 Cal.4th 856, 906; accord, *People v. Rodriquez* (2020) 9 Cal.5th 474, 480 ["'"Statements of supposed facts not in evidence . . . are a highly prejudicial form of misconduct, and a frequent basis for reversal."'"].) Further, "counsel should not quote individual jurors in their argument to the entire jury." (*People v. Freeman* (1994) 8 Cal.4th 450, 517; accord, *People v. Lima, supra*, 49 Cal.App.5th at p. 533.)

But Gonzalez has failed to show it is reasonably probable the jury would have reached a result more favorable to him absent the prosecutorial misconduct. Before closing arguments, the trial court instructed the jury, "Evidence is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence. [¶] Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence; their questions are not evidence; only the witnesses' answers are evidence." We presume the jury understood and followed the trial court's instructions. (*People v. Flores* (2020) 9 Cal.5th 371, 405; *People v. Frederickson* (2020) 8 Cal.5th 963, 1026.)

Further, defense counsel admitted delayed reporting of sexual abuse was common knowledge, stating in her closing argument, "Now, we all listen to the news, and we know that sometimes people don't report these things." Moreover, both Alicia and Jennifer articulated why they delayed reporting the sexual abuse. Alicia was afraid no one would believe her, and she wanted to "erase what happened." Although she delayed

12

reporting the sexual abuse for four or five years, she was spurred to report the abuse when she learned from Jennifer what Gonzalez had done to her.  Jennifer feared Gonzalez would kill her mother if she told her mother about the sexual abuse.  But she reported the abuse just a couple of months later.  In addition, Alicia's description of how Gonzalez touched her vagina under her clothing during a sleepover while Munoz was home was consistent with how Jennifer described Gonzalez's conduct.  On this record, it is not reasonably probable that a result more favorable to Gonzalez would have been reached absent the prosecutorial misconduct.  (See *People v. Lima, supra*, 49 Cal.App.5th at p. 535 [prosecutor "improperly argued fact not in evidence . . . and improperly quoted individual jurors" by referencing prospective jurors' experiences with gangs, but the misconduct was harmless].)

B.      *Section 288.5 Is Not Unconstitutional*

Gonzalez contends his conviction under section 288.5 violates his federal and state constitutional rights to due process and a jury trial because the statute allows for a conviction without the jury's unanimous agreement as to which acts constitute the offense.  Gonzalez concedes numerous Courts of Appeal have rejected constitutional challenges to section 288.5, but he argues they were wrongly decided.  They were not.

Section 288.5, subdivision (a), provides, "Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, . . . or three or more

13

acts of lewd or lascivious conduct, . . . with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child . . . ." "Although the jury must unanimously agree that the defendant molested the child at least three times, it need not agree on precisely when or where the requisite three incidents occurred." (*People v. Grant* (1999) 20 Cal.4th 150, 154; see § 288.5, subd. (b) ["To convict under this section the trier of fact, if a jury, need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number."].)

"As a general rule, when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty." (*People v. Jennings* (2010) 50 Cal.4th 616, 679; accord, *People v. Russo* (2001) 25 Cal.4th 1124, 1132 ["In a criminal case, a jury verdict must be unanimous."].) But "no unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which arises 'when the acts are so closely connected in time as to form part of one transaction' [citation], or 'when . . . the statute contemplates a continuous course of conduct or a series of acts over a period of time.'" (*Jennings*, at p. 679; accord, *People v. Selivanov* (2016) 5 Cal.App.5th 726, 752.) "'The crime of continuous sexual abuse of a child (§ 288.5) is a continuous-course-of-conduct crime and therefore falls within the exception to the rule that jurors must agree on the particular criminal acts committed by the defendant before convicting him.'" (*People v.*

14

*Cissna* (2010) 182 Cal.App.4th 1105, 1124; accord, *People v. Adames* (1997) 54 Cal.App.4th 198, 207.)

Because section 288.5 is a continuous-course-of conduct crime, numerous Courts of Appeal have upheld its constitutionality. (See *People v. Cissna, supra*, 182 Cal.App.4th at pp. 1124-1126 [rejecting constitutional challenge, finding "no violation of the constitutional right to unanimous agreement on the criminal conduct because the actus reus of the offense is the course of conduct, not a specific act"]; *People v. Adames, supra,* 54 Cal.App.4th at p. 207 ["We hold that the absence of a requirement that the jury unanimously agree on the particular incidents underlying a violation of section 288.5 does not violate the federal Constitution, specifically, the Sixth Amendment guarantee of the right to a jury trial or the Fourteenth Amendment guarantee of due process."]; *People v. Whitham* (1995) 38 Cal.App.4th 1282, 1295-1297 [requirement of unanimous agreement to course of conduct satisfies federal and state constitutions]; *People v. Gear* (1993) 19 Cal.App.4th 86, 92-93 ["The statute requires jury unanimity with respect to the course of conduct—i.e., the *actus reus*—and thereby satisfies the constitutional requirement."]; *People v. Avina* (1993) 14 Cal.App.4th 1303, 1313 ["In a prosecution for a course-of-conduct offense, where the evidence shows only a single course of conduct, the jury need not be instructed on a need for unanimity as to the conduct supporting the conviction."]; *People v. Higgins* (1992) 9 Cal.App.4th 294, 307 ["The fact that the jurors select different acts to satisfy the numerical threshold for a course of conduct does not render [section 288.5] unconstitutional. Rather, it assures the jury must agree there is a course of conduct and

15

prevents conviction based on a single act or a series of acts upon which the jury does not agree."].)

Gonzalez argues section 288.5 is not a course-of-conduct offense, distinguishing it from the offenses of child abuse (§ 273a), spousal battery (§273.5), animal cruelty (§ 597), accessory after the fact (§ 32), and dissuading a witness (§ 136.1). He argues those course-of-conduct crimes may be comprised of individual acts that are not themselves criminal, and none of those offenses requires a specific number of defined qualifying acts be committed over a specific time period, unlike section 288.5. But section 288.5, subdivision (b), "states expressly that it is to be treated as a continuous-course-of-conduct crime for purposes of the unanimity rule; that is, that unanimity is not required on any particular acts of molestation." (*People v. Avina, supra*, 14 Cal.App.4th at p.1310; accord, *People v. Cissna, supra*, 182 Cal.App.4th at p. 1124 ["'continuous sexual abuse of a child (§ 288.5) is a continuous-course-of-conduct crime'"]; *People v. Whitham, supra*, 38 Cal.App.4th at p. 1296 ["The text of section 288.5 leaves no doubt the Legislature intended to create a course-of-conduct offense [citations]; it is undeniably '"the continuing course of abuse which leads to prosecution and conviction"'"]; *People v. Higgins, supra*, 9 Cal.App.4th at p. 304 ["The Legislature has the prerogative to proscribe a course of conduct, rather than specific acts, a prerogative exercised by adoption of Penal Code section 288.5."].) We find the reasoning of our colleagues persuasive and likewise conclude section 288.5 is constitutional.

16

C.    *Substantial Evidence Supports Gonzalez's Conviction of Continuous Sexual Abuse of Alicia (Count 1)*

1.    *Standard of review*

"In evaluating a claim regarding the sufficiency of the evidence, we review the record 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Westerfield* (2019) 6 Cal.5th 632, 713; accord, *People v. Penunuri* (2018) 5 Cal.5th 126, 142 ["'To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt.'"].) "''Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.'"" (*Penunuri*, at p. 142; accord, *People v. Mendez* (2019) 7 Cal.5th 680, 703.)

"'The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence.' [Citations.] 'We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.'" (*People v.*

17

*Westerfield, supra*, 6 Cal.5th at p. 713; accord, *People v. Penunuri, supra*, 5 Cal.5th at p. 142 ["'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict.'"].)

2. *Substantial evidence supports the jury's finding Gonzalez sexually abused Alicia over at least a three-month period*

Gonzalez contends there is insufficient evidence to support his conviction of continuous sexual abuse of Alicia because the evidence does not show three months elapsed between the first and last acts of sexual abuse. Gonzalez argues the more than 20 sexual abuse incidents could have occurred within two-and-a-half months because the abuse started sometime in the spring of 2010 and ended by that June, when Alicia completed the fifth grade. Substantial evidence supports Gonzalez's conviction.

To satisfy the three-month element of section 288.5, subdivision (a), "the prosecution need not prove the exact dates of the predicate sexual offenses." (*People v. Mejia* (2007) 155 Cal.App.4th 86, 97 (*Mejia*); accord, *People v. Valenti* (2016) 243 Cal.App.4th 1140, 1158.) "Rather, it must adduce sufficient evidence to support a reasonable inference that at least three months elapsed between the first and last sexual acts. Generic testimony is certainly capable of satisfying that requirement [but] 'the victim must be able to describe *the general time period* in which these acts occurred (e.g., "the summer before my fourth grade," or "during each Sunday morning after he came to live with us"), to assure the acts were committed within the applicable limitation period.' [Citations.] That is, while generic

18

testimony may suffice, it cannot be so vague that the trier of fact can only speculate as to whether the statutory elements have been satisfied." (*Mejia*, at p. 97; accord, *Valenti*, at p. 1158.)

The facts of *Mejia, supra*, 155 Cal.App.4th at page 97, relied on by Gonzalez, are distinguishable.  There, the "[d]efendant was charged and convicted of continuous sexual abuse of the victim 'on or between June 1, 2004 and September 17, 2004.'" (*Id*. at p. 93.)  The evidence showed the defendant first abused the victim sometime in June 2004, and the abuse ended sometime in September 2004.  (*Id*. at pp. 94-95.) "[T]he victim testified generally that defendant molested her 'two or three days a week,' but she clarified that defendant did not molest her every week within that time period." (*Id*. at p. 95.) The Court of Appeal reversed the conviction, explaining, "[T]he only reasonable inference permitted by the evidence was that defendant's abuse began sometime in June and continued to some date in September—but the jury could only speculate that the first incident occurred early enough in June to satisfy the 90-day requirement expiring on September 17, 2004." (*Ibid.*)

In contrast to *Mejia*, the jury could have reasonably inferred from the evidence that the abuse started in the spring of 2010 and continued for at least three months into the fall of that year.  Alicia testified the first sexual abuse incident occurred in the spring of 2010 when she was 11 years old.  According to Alicia, Gonzalez sexually abused her on more than 20 separate occasions in 2010 during almost every weekend she spent at the homes of Gonzalez and Munoz.  The jury could have reasonably inferred the abuse lasted more than three months (over 20 weekends), because Alicia was abused once each weekend— "every Saturday or Sunday" when she stayed at Gonzalez and

Munoz's home. The sexual abuse stopped when Alicia was placed in foster care during her "last year of elementary school going into middle school." The jury could have reasonably inferred this meant the abuse ended when Alicia started the fifth grade (her last year of elementary school) the following fall. This is consistent with Alicia's testimony it was "maybe" true the abuse ended when she was 12 or 13 years old (after October 2010).

D.     *Gonzalez's Conviction of Sodomy (Count 2) Must Be Vacated Because Counts 1 and 2 Involve the Same Victim During the Same Time Period*

Gonzalez contends, the People concede, and we agree Gonzalez's conviction for sodomy of Alicia must be vacated because he was also convicted of continuous sexual abuse of Alicia during the same time period, which the information charged was from January 1, 2010 to January 1, 2011.[6] Section 288.5, subdivision (c), provides in part, "No other act of substantial sexual conduct, as defined in subdivision (b) of Section 1203.066, with a child under 14 years of age at the time of the commission of the offenses, or lewd and lascivious acts, as defined in Section 288, involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative."

"[I]f an accusatory pleading is improper (i.e., a count alleging violation of section 288.5 is joined, and not—as

---

[6]     Because we vacate the conviction of sodomy in count 2, we do not reach Gonzalez's argument the failure to file a demurrer to the information constituted ineffective assistance of counsel.

20

subdivision (c) requires—charged alternatively, with one or more counts alleging specific sexual offenses), then the multiple convictions predicated thereon cannot stand, and either the continuous abuse conviction or the convictions on the specific offenses must be vacated." (*People v. Johnson* (2002) 28 Cal.4th 240, 245, 248, italics omitted; accord, *People v. Wilson* (2019) 33 Cal.App.5th 559, 573.) "[I]n deciding which convictions to vacate as the remedy for a violation of the proscription against multiple convictions set forth in section 288.5, subdivision (c), . . . we leave appellant standing convicted of the alternative offenses that are most commensurate with his culpability." (*People v. Torres* (2002) 102 Cal.App.4th 1053, 1059; accord, *Wilson*, at p. 573; *People v. Rojas* (2015) 237 Cal.App.4th 1298, 1309; *People v. Bautista* (2005) 129 Cal.App.4th 1431, 1437-1438.) "This will ordinarily translate to upholding whichever conviction resulted in the greater aggregate penalty and vacating the less serious count." (*Rojas*, at p. 1309.)

Gonzalez was sentenced to 15 years to life for continuous sexual abuse and six years for sodomy, which was stayed under section 654. We uphold the conviction for continuous sexual abuse because it is more commensurate with Gonzalez's culpability, imposing the greater aggregate penalty. (See *People v. Wilson, supra*, 33 Cal.App.5th at p. 573 [affirming convictions of 12 specific offenses and vacating single continuous sexual abuse count because the specific offenses "were most commensurate with defendant's culpability"]; *People v. Bautista, supra*, 129 Cal.App.4th at p. 1438 [affirming conviction of continuous sexual abuse and vacating four convictions of procurement where the former was more commensurate with defendant's culpability]; *People v. Torres, supra*, 102 Cal.App.4th

21

at p. 1060 [reversing conviction of violating section 288.5 where defendant faced a greater maximum aggregate penalty for the specific offenses than the continuous sexual abuse offense].)

Gonzalez has cited no support for his additional contention the trial court's failure to instruct the jury that it could not convict him of both sexual abuse counts requires reversal of both convictions. To the contrary, the appropriate remedy is to vacate only one of the two counts. (*People v. Wilson, supra*, 33 Cal.App.5th at p. 574 ["To vacate these convictions, based simply on the trial court's procedural mistake in failing to instruct that section 288.5 was an alternative to [the specific offenses], would give defendant an unjustified windfall."]; *People v. Rojas, supra*, 237 Cal.App.4th at pp. 1308-1309 [vacating continuous sexual abuse conviction in addition to reversal of specific offense conviction "would result in an unwarranted and inequitable windfall in [defendant's] favor, which would not leave him standing convicted of an alternative offense commensurate with his culpability"].)

E.     *Gonzalez Forfeited His Challenge to Imposition of the Fines and Assessments, and* Dueñas *Does Not Apply to Direct Victim Restitution*

  1.     *Gonzalez forfeited his challenge to the fines and assessments*

Gonzalez contends the trial court violated his constitutional rights to due process and to be free from excessive fines by imposing the court assessments, restitution fines, and sex offender fine in the absence of evidence of his ability to pay. Gonzalez has forfeited his challenge to these fines and assessments.

22

In *Dueñas*, this court concluded "the assessment provisions of Government Code section 70373 and Penal Code section 1465.8, if imposed without a determination that the defendant is able to pay, are . . . fundamentally unfair; imposing these assessments upon indigent defendants without a determination that they have the present ability to pay violates due process under both the United States Constitution and the California Constitution." (*Dueñas, supra*, 30 Cal.App.5th at p. 1168; accord, *People v. Belloso* (2019) 42 Cal.App.5th 647, 654-655, review granted Mar. 11, 2020, S259755 (*Belloso*).)

In contrast to court assessments, a restitution fine under section 1202.4, subdivision (b), "is intended to be, and is recognized as, additional punishment for a crime." (*Dueñas,* at p. 1169; accord, *Belloso,* at p. 655.) Section 1202.4, subdivision (c), expressly provides a defendant's inability to pay a restitution fine may not be considered as a "compelling and extraordinary reason" not to impose the statutory minimum fine. However, as this court held in *Dueñas*, to avoid the serious constitutional questions raised by imposition of a restitution fine on an indigent defendant, "although the trial court is required by Penal Code section 1202.4 to impose a restitution fine, the court must stay the execution of the fine until and unless the People demonstrate that the defendant has the ability to pay the fine." (*Dueñas*, at p. 1172; accord, *Belloso*, at p. 655.)

However, section 290.3, subdivision (a), specifically provides for consideration of a defendant's ability to pay, stating that persons convicted of specified sex offenses, including violation of section 288.5, "shall . . . be punished by a fine of three hundred dollars ($300) upon the first conviction . . . , unless the court determines that the defendant does not have the ability to

pay the fine." Because Gonzalez had a right to raise his ability to pay the sex offender fine, he forfeited his challenge to the fine by not raising his inability to pay at the time of sentencing. (*People v. Acosta* (2018) 28 Cal.App.5th 701, 705 ["by failing to object to [the sex offender] fines at sentencing, [the defendant] has waived any claim on appeal that the trial court improperly imposed them"]; see *People v. McCullough* (2013) 56 Cal.4th 589, 593 [defendant forfeited challenge to imposition of booking fee because he failed to raise his ability to pay the fee in the trial court].)

Further, because Gonzalez had the statutory right to raise his inability to pay the $300 sex offender fine, but elected not to object to the fine at the time of sentencing, we conclude he would not have challenged the other fines and assessments in a similar amount even if he was aware of his right to raise his inability to pay—the $90 in court facilities assessments, $120 in court operations assessments, $300 restitution fine, and $300 parole revocation restitution fine, which was stayed. Thus, Gonzalez forfeited his challenge. (See *People v. Smith* (2020) 46 Cal.App.5th 375, 395 [defendant forfeited challenge to assessments and fines because he did not object to imposition of $10,000 restitution fine]; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033 ["As a practical matter, if [defendant] chose not to object to a $10,000 restitution fine based on an inability to pay, he surely would not complain on similar grounds regarding an additional $1,300 in fees."]; but see *People v. Taylor* (2019) 43 Cal.App.5th 390, 400-401 [failure of a defendant to object to imposition of a restitution fine above the statutory minimum does not result in forfeiture of a challenge to the court assessments because a defendant's ability to pay the restitution

fine is only one of the factors the court should consider in setting the restitution fine above the statutory minimum].)[7]

   2.  *Gonzalez is not entitled to an ability-to-pay hearing as to the victim restitution order*

"Section 1202.4, subdivision (f) provides for a direct restitution order 'in every case in which a victim has suffered economic loss as a result of the defendant's conduct.' The order is to be for an amount 'sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct.'" (*People v. Brasure* (2008) 42 Cal.4th 1037, 1074-1075; accord, *Walker v. Appellate Division of Superior Court* (2017) 14 Cal.App.5th 651, 656 ["'Restitution is constitutionally and statutorily mandated in California.'"].) Here, the court ordered restitution be paid to the Victim Compensation Board pursuant to section 1202.4, subdivision (f)(2), which applies where a victim has received assistance from the Board. Section 1202.4, subdivision (g), specifically provides that "[a] defendant's inability to pay shall not be a consideration in determining the amount of a restitution order." Therefore, "*Dueñas* does not apply to victim restitution under section 1202.4, subdivision (f)." (*People v. Abrahamian* (2020) 45 Cal.App.5th 314, 338; accord, *People v. Evans* (2019) 39 Cal.App.5th 771, 777.)

   Moreover, by stipulating to the $2,700 victim restitution fine, Gonzalez forfeited any right to challenge the amount of

---

[7]   In contrast to imposition of restitution fines above the statutory minimum, section 290.3, subdivision (a), does not provide any factors for the court to consider in deciding whether to impose the sex offender fine other than the defendant's ability to pay.

restitution.  (*People v. Brasure, supra*, 42 Cal.4th at p. 1075 [defendant forfeited challenge to victim restitution order where he "neither raised an objection to the amount of the order nor requested a hearing to determine it"]; *People v. Mays* (2017) 15 Cal.App.5th 1232, 1237 ["A defendant wishing to argue on appeal that there is no factual basis for a restitution order must object on that ground in the trial court to preserve the issue for appeal."].)

## DISPOSITION

Gonzalez's conviction of sodomy (count 2) is vacated, and the judgment is affirmed as modified.  The superior court is directed to prepare a corrected abstract of judgment striking the conviction of sodomy and six-year sentence imposed and stayed on count 2 and to forward a copy of the corrected abstract to the Department of Corrections and Rehabilitation.[8]

FEUER, J.

We concur:

PERLUSS, P. J.            SEGAL, J.

---

[8]     Because we vacate Gonzalez's conviction of sodomy, the trial court must reduce the total court facilities assessments to $60 and court operations assessments to $80 to reflect his convictions on only two counts.

26