[No. A105375. First Dist., Div. Two. May 24, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
ROMELITA BAUTISTA, Defendant and Appellant.

[No. A106495. First Dist., Div. Two. May 24, 2005.]

In re ROMELITA BAUTISTA, on Habeas Corpus.

COUNSEL

Law Offices of John F. Shuck and John F. Schuck for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Jeffrey M. Laurence and Margo J. Yu, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RUVOLO, J.—

## I.

### INTRODUCTION

Pursuant to her plea of no contest, Romelita Bautista (Bautista) was convicted of one count of continuous sexual abuse of a child, six counts of procurement regarding two children under 16 years of age for lewd and lascivious acts, and one count of a lewd or lascivious act with a child. She alleges that her conviction of one count of procurement was barred by the statute of limitations, and that she could not be convicted of both continuous sexual abuse and procurement of the same child during the same time period. Bautista also filed a petition for writ of mandate based on claimed ineffective assistance of counsel, which we consider with her appeal.

We agree that one of the counts of procurement (count 2), is barred by the statute of limitations, and reverse that conviction. We also agree that Bautista was erroneously convicted of both continuous sexual abuse of a child and procurement of the same child during the same time period, and reverse her procurement convictions in counts 3, 4, 5 and 6.

## II.

### PROCEDURAL BACKGROUND

The Alameda County Grand Jury returned an indictment charging Bautista with continuous sexual abuse of her daughter C., a child under the age of 14 (Pen. Code, § 288.5, subd. (a))[1] (count 1), six counts of procurement; five involving C. (counts 2, 3, 4, 5 & 6), and one regarding another child, A.

---

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

(count 8), both under the age of 16 (§ 266j). The indictment also alleged that Bautista committed a lewd and lascivious act on A., a child under the age of 14 (§ 288, subd. (a)) (count 7). The indictment further alleged that Bautista had a prior conviction. Bautista initially pled not guilty, then changed her plea to no contest to all counts, and admitted the prior conviction.

The court sentenced Bautista to the middle term of 12 years in prison for the continuous sexual abuse of C., and a concurrent 6 years for the procurement of C. alleged in count 2. The court stayed the sentences on the remaining four counts of procurement of C. and one count of procurement of A., and on the one count of lewd and lascivious acts with A. This timely appeal followed.

### III.

#### FACTUAL BACKGROUND

The following facts were summarized in the probation report. In the 1990's, Bautista worked at a massage parlor in Oakland. Richard Roth, a wealthy computer programmer, was a frequent customer there. He paid for the women who worked there, including Bautista, to massage and masturbate him. Roth and Bautista decided that Bautista would begin coming to Roth's home in Alameda to masturbate him. This arrangement continued on a regular basis for approximately five years.

Roth persuaded Bautista to bring her daughter, C., born in 1987, with her to engage in sexual relations. Bautista agreed, and first brought C. to Roth's house when C. was eight years old. During that first visit, Bautista removed her clothes and masturbated Roth, who was on his bed. Roth asked C. if she wanted to take off her clothes, but C. declined. C. watched as her mother masturbated Roth, wiped off the ejaculate with a towel, and received money from Roth. She testified at the preliminary hearing that she was "scared."

Bautista again brought C. with her to Roth's house the following week. This time, C. "did what she was told." C. and Bautista undressed in the bathroom, and entered Roth's bedroom. Bautista began to masturbate Roth, who was lying naked on the bed. Bautista instructed C. to massage Roth's arms and legs with lotion. While C. did so, Roth touched and rubbed C.'s breasts and vagina. C. felt uncomfortable and moved away. Bautista then told C. to masturbate Roth, which she did. Following Roth's ejaculation, he paid Bautista $300, which she shared with C.

Bautista continued to bring C. with her to Roth's house approximately once a week from the summer of 1995 until the summer of 1999. Between

the summer of 1999 and the summer of 2000, Bautista and C. went less frequently, about once or twice per month, due to Bautista's incarcerations. Each time they were there, they undressed, massaged and masturbated Roth, wiped him off after he ejaculated, and received $300 from Roth. C. called Roth "Uncle Richie."

Beginning about a month after C.'s first visit to Roth's house in 1995, Roth showed her child pornography and pornography involving cartoon characters on his computer. He asked C. if he could perform oral sex on her or have sexual intercourse with her. She declined.

C. had a friend, A., also born in 1987, whom Bautista had known for years. In March 2000, Bautista asked A. if she wanted to earn some extra money by going to Roth's residence. The pair went to Roth's home, removed their clothes in the bathroom, and entered Roth's bedroom. A. massaged Roth, who was lying naked on the bed, and Bautista masturbated him. Roth paid them.

A. went to Roth's home on other occasions without Bautista. In July 2000, she accompanied C. to Roth's residence where they undressed. C. massaged Roth while A. masturbated him. Roth paid them each $150. This was the last time C. went to Roth's home, and the only time she went without Bautista. In August 2000, A. took 16-year-old L. to Roth's home. A. told police she took two other minors to Roth's home to masturbate him for money.

C.'s father reported her molestation to the police in November 2000, after C. revealed to her father how she was able to make several new purchases. C. had been reluctant to tell her father because Bautista beat C. when she told a friend what was happening, and told C. never to tell anyone about the activities in which they engaged at Roth's home.

### IV.

#### Discussion

#### A. Certificate of Probable Cause

At the outset, the Attorney General maintains that Bautista's failure to obtain a certificate of probable cause precludes her from raising the issues she does on appeal. Bautista argues that a certificate of probable cause was not required. In her writ petition, she asserts that if a certificate of probable cause was necessary, her counsel was ineffective in failing to make a proper request for one. Because Bautista has asserted ineffective assistance of counsel in

relation to these two issues, we address each on the merits. (See *People v. Welch* (1999) 20 Cal.4th 701, 759–760 [85 Cal.Rptr.2d 203, 976 P.2d 754].)

## B. Conviction of Both Continuous Sexual Abuse and Procurement Involving the Same Victim

Bautista argues that section 288.5 proscribed her conviction of both continuous sexual abuse of C. and her convictions of procurement of C. during the same time period. Section 288.5 provides in part: "No other felony sex offense involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative." (§ 288.5, subd. (c).) There is no dispute that the offenses were not charged in the alternative.

■ The California Supreme Court addressed the issue of whether this section also prohibits conviction of both continuous sexual abuse and other sex offenses against the same victim during the same time period. It held that, because "section 288.5, subdivision (c) clearly mandates the charging of continuous sexual abuse and specific sexual offenses, pertaining to the same victim over the same period of time, only in the alternative, [the prosecution] may not obtain multiple convictions in the latter circumstance." (*People v. Johnson* (2002) 28 Cal.4th 240, 248 [121 Cal.Rptr.2d 197, 47 P.3d 1064].)

The Attorney General maintains that procurement of a child as defined in section 266j is not necessarily a "felony sex offense," and therefore Bautista can legally be convicted of violating both section 288.5 and section 266j. The Attorney General cites no cases in support of this proposition, but argues that no case has held that section 266j is a "felony sex offense" within the meaning of section 288.5, subdivision (c).[2]

Numerous cases describe procurement under section 266j as a "sex offense." (*People v. Garcia* (2001) 25 Cal.4th 744, 758 [107 Cal.Rptr.2d 355, 23 P.3d 590]; *Pro-Family Advocates v. Gomez* (1996) 46 Cal.App.4th 1674, 1679 [54 Cal.Rptr.2d 600] & fn. 4; see *Hatch v. Superior Court* (2000) 80 Cal.App.4th 170, 203, fn. 38 [94 Cal.Rptr.2d 453].) Though these cases did not consider whether a violation of section 266j is a "felony sex offense" within the meaning section 288.5, subdivision (c), the Attorney General has cited no authority for its claim that "sex offense" should have a different meaning under section 288.5, subdivision (c).

---

[2] The parties do not dispute that violation of section 266j is a felony.

■ The Attorney General advances the novel argument that, because section 266j can be violated without proof of sexual contact, it is not a "sex offense" within the meaning of section 288.5.[3] We disagree. Section 266j provides: "Any person who intentionally gives, transports, provides, or makes available, or who offers to give, transport, provide, or make available to another person, a child under the age of 16 for the purpose of any lewd or lascivious act as defined in Section 288, or who causes, induces, or persuades a child under the age of 16 to engage in such an act with another person, is guilty of a felony . . . ." While a person can be convicted of violating section 266j without proof of sexual contact, he or she cannot be convicted of procurement without proof of a sexual purpose. A violation of section 266j requires that the procurement of the child be "for the purpose of any lewd or lascivious act as defined in Section 288 . . . ." The possibility that the lewd purpose may be thwarted does not lead to the conclusion that procurement is not a sex crime.

The court in *People v. Johnson* held that when multiple convictions are obtained in violation of section 288.5, "either the continuous abuse conviction or the convictions on the specific offenses must be vacated." (*People v. Johnson, supra,* 28 Cal.4th at p. 245.) Bautista argues that her conviction of continuous sexual abuse of C. should be vacated. In making this argument she contends that "the five section 266j sex offenses are more commensurate with [her] conduct."

In *People v. Torres* (2002) 102 Cal.App.4th 1053 [126 Cal.Rptr.2d 92], the court addressed the issue of which conviction should be reversed where a defendant is erroneously convicted of both continuous sexual abuse of a child and a felony sex crime against the same child during the same time period. The court held "in deciding which convictions to vacate as the remedy for a violation of the proscription against multiple convictions set forth in section 288.5, subdivision (c), . . . we leave appellant standing convicted of the alternative offenses that are most commensurate with his culpability." (*Id.* at p. 1059.)

The facts here indicate that Bautista first brought her daughter C. to Roth's home for the purpose of engaging in numerous lewd or lascivious acts when C. was eight years old. Over a period of approximately five years, Bautista brought her daughter to Roth's home on a weekly basis, except during time

---

[3] While the Attorney General correctly notes that section 266j's placement in title 9 ("Of Crimes Against the Person Involving Sexual Assault, and Crimes Against Public Decency and Good Morals") does not change the scope or intent of the statute, "consideration may be given to chapter and section headings in codes in interpreting the various sections . . . ." (*Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 727 [80 Cal.Rptr.2d 506, 968 P.2d 65], disapproved on another ground in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854, fn. 19 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

periods when Bautista was incarcerated. With the exception of the first visit, each time Bautista brought C. to Roth's home, C. was required to undress, massage Roth, and masturbate him. Bautista has not suggested how a conviction of four counts of procuring C. is in any way more commensurate with her culpability than a conviction of continuous sexual abuse of C., and we fail to see how convicting Bautista only of procurement is in any way proportionate to the egregious criminal conduct in which she engaged. Consequently, we affirm the conviction of continuous sexual abuse of C., and vacate her convictions of procurement of C.

### C.   Statute of Limitations for Penal Code section 266j

Bautista also asserts that she could not be convicted of count 2, procurement of C., during the time period from July 21, 1995, through July 21, 1996, because the six-year statute of limitations on that offense had expired by the time the indictment was returned on August 20, 2002. (§ 800.) The Attorney General agrees that prosecution of count 2 was barred by the statute of limitations, but maintains that the case should be remanded for resentencing in order to allow the trial court to impose a concurrent sentence on the procurement conviction regarding A.

■    Since 1934, California courts have held that " 'a conviction, even if based on a plea of guilty, is subject to . . . attack if the charge was originally barred by the applicable limitation period.' " (*Cowan v. Superior Court* (1996) 14 Cal.4th 367, 372 [58 Cal.Rptr.2d 458, 926 P.2d 438], citing *People v. Zamora* (1976) 18 Cal.3d 538, 547 [134 Cal.Rptr. 784, 557 P.2d 75]; see *People v. McGee* (1934) 1 Cal.2d 611, 613–614 [36 P.2d 378].) In *Cowan*, the court held that a defendant may waive the statute of limitations and plead guilty to a time-barred offense, but only where the waiver is knowing and voluntary, made for the defendant's benefit, and does not handicap his or her defense or contravene public policy. (*Cowan, supra,* at pp. 372–373.) Here, the Attorney General does not assert, and the record does not reflect, that the requirements of *Cowan* were met. Accordingly, the conviction in count 2 must be reversed for this independent reason.

In light of the reversal of Bautista's convictions of procurement of C., we remand for resentencing to allow the trial court "to reconsider [the] entire sentencing structure . . . ." (*People v. Burbine* (2003) 106 Cal.App.4th 1250, 1258 [131 Cal.Rptr.2d 628].)

## V.

### DISPOSITION

Bautista's convictions of section 266j in counts 2, 3, 4, 5 and 6 are reversed. In light of these reversals, we remand the case to the trial court for resentencing. The trial court shall prepare an amended abstract of judgment and forward a copy of it to the Department of Corrections. The petition for writ of mandate is denied. In all other respects, the judgment is affirmed.

Haerle, Acting P. J., and Lambden, J., concurred.