Filed 8/23/22  P. v. Worley CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. JOEL THOMAS WORLEY, Defendant and Appellant. | F083241 (Super. Ct. No. BF175740A) OPINION |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Brian M. McNamara, Judge.

Brad Kaiserman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and George M. Hendrickson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Levy, J. and Detjen, J.

# INTRODUCTION

Between March 13, 2014, and February 28, 2015, Jane Doe's[1] uncle, defendant Joel Thomas Worley, sexually molested her both at her grandparent's house and at her apartment. On July 15, 2021, a jury convicted defendant of lewd and lascivious conduct with Doe, a minor under the age of 14, on or about and between March 13, 2014, and January 31, 2015 (Pen. Code, § 288, subd. (a); count 3)[2]; lewd and lascivious conduct with Doe, a minor under the age of 14, on or about and between February 1, 2015, and February 28, 2015 (§ 288, subd. (a); count 4); and continuous sexual abuse of Doe, a minor under the age of 14, on or about and between March 13, 2014, and February 28, 2015 (§ 288.5, subd. (a); count 5). The jury acquitted defendant of two counts of sodomy with Doe, a child under the age of 10 years old (§ 288.7, subd. (a); counts 1 & 2). As to count 5, the trial court subsequently sentenced defendant to the upper term of 16 years. As to counts 3 and 4, the trial court sentenced defendant on both counts to the upper term of eight years, but stayed both sentences pursuant to section 654.[3]

On appeal, defendant contends, and the People agree, that he was improperly convicted of two acts of lewd and lascivious conduct (§ 288, subd. (a); counts 3 & 4) and continuous sexual abuse (§ 288.5, subd. (a); count 5) because counts 3 and 4 *and* count 5 involved the same victim and occurred within the same time period. However, the People argue count 5 should be affirmed, whereas defendant argues counts 3 and 4 should be affirmed.

---

[1] The victim was referred to as "Jane Doe" throughout the trial for purposes of privacy protection.

[2] All further references are to the Penal Code.

[3] As to counts 3 and 4, the August 26, 2021 minute order states only the fines and fees were stayed pursuant to section 654. However, the abstract of judgment and the reporter's transcript of defendant's sentencing indicate the sentences, as to both counts 3 and 4, were stayed pursuant to section 654.

We affirm defendant's conviction as to count 5. We vacate his convictions and stayed sentences imposed on counts 3 and 4.

## FACTS

Between March 13, 2014, and February 28, 2015, defendant engaged in sexually abusive behavior towards Doe when she was seven, eight, and nine years old. Doe did not tell anyone about the abuse until she was 12 years old, resulting in law enforcement becoming involved.

## I.    Prosecution Case-In-Chief

### A.    Doe's Testimony

Doe was born in 2006 and was 15 years old at the time of trial. Steve[4] and Dianne were Doe's paternal grandparents. Dianne passed away when Doe was nine or 10 years old. Prior to Dianne's passing, Doe visited her paternal grandparents in Bakersfield "pretty much every weekend" and was "pretty close" with Dianne from a young age.

Defendant, Doe's uncle, also lived at her grandparent's house. Doe had known defendant since she was "really little" and they were "close most of the time." Defendant took Doe to the park and walked her to the store. They also watched television together.

However, Doe's relationship with defendant waned after he started inappropriately touching her. Defendant sexually touched Doe when she was seven, eight, and nine years old. On several occasions, defendant digitally penetrated Doe and made her orally copulate him.

The first incident occurred when Doe was seven years old. One night, while Doe was lying in bed in the apartment in Bakersfield where she lived at the time, defendant asked her to go to the bathroom with him. While inside the bathroom, defendant pulled out his penis and made Doe look at it for approximately 30 seconds.

---

[4] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

The next incident happened at Doe's grandparent's house when she was eight years old. Doe lay in defendant's bed and watched television for approximately five minutes. Defendant came home, took his pants off, and lay in bed next to Doe. Defendant then put his hand on top of Doe's head and told her to "suck." Doe then placed her mouth on defendant's penis and defendant "repeatedly . . . push[ed] down [on her] head." After the incident, defendant was "really nice" to Doe and "would take [her] out to eat a lot." Doe did not tell anyone about the incident because she "felt like nobody would believe [her]" and that "would lead up to [her] getting in trouble with [her] parents."

Another incident occurred at Doe's grandparent's house when Doe was eight years old. Both Doe and defendant were sitting on a loveseat with a blanket covering their laps. Defendant and Doe's brother played a video game. At some point, while sitting on the loveseat, defendant placed his hand over Doe's hand and made her "stroke" his penis outside his clothes for approximately three minutes. Doe eventually moved to another part of the loveseat.

Lastly, Doe remembered an incident that occurred when she was eight years old. Doe woke up in the night and found herself in defendant's bed, lying on top of him. Defendant was on his back and Doe was on her stomach on top of defendant's chest, so they were facing each other. Doe was wearing a shirt, but nothing else. She was no longer wearing her pants or underwear. Doe did not know why she was only wearing a shirt.

After these incidents, Doe tried to "cancel[] out [her] feelings" and feared if she told anyone she would get in trouble. Doe estimated defendant inappropriately touched her three to four times. Doe was asked whether "defendant's penis ever touched [her] butt hole" and Doe responded, "No." The touching ended when Doe was nine years old because she realized "it was wrong and [she] stopped [defendant]." However, Doe did not tell anyone about the incidents until she was 12 years old because she did not want to

4.

cause problems in her family. Eventually, Doe told her father about the abuse resulting in law enforcement becoming involved.

**B.      Social Worker Barton's Testimony**

Barton, a social worker and lead forensic interviewer for Kern County, spoke with children about being a witness to a crime, or being a victim of sexual abuse, physical abuse, and domestic violence. Barton interviewed Doe about several sexual abuse incidents. During the interview, Doe estimated there were six to eight separate incidents of sexual abuse. Doe stated the first incident occurred at her grandparent's house when she was eight years old. Doe and defendant were in defendant's bedroom watching television when she fell asleep and later awoke with defendant on top of her. Her stomach was facing towards the bed while defendant was on top. Doe told defendant to stop, but defendant "covered [her] mouth" with his hand and did not stop. Doe's "lower part" and "butt" hurt. Barton asked Doe, "When you said that it was hurting, and you kinda [*sic*] circled all this area right here, was it hurting on the outside of your body or on the inside of your body?" and Doe responded, "The inside."

Doe also told Barton "the same thing" happened one month later. Doe wrote on a note during the interview that defendant pulled down Doe's clothes and " 'stuck his genitals up inside of me.' " She stated defendant " 'stuck' " his penis in "[t]he back part again." The last time defendant sexually assaulted Doe was "when [she was] turning nine years old." Doe eventually disclosed the abuse to her father because defendant "was in jail for doing that to two other girls."

**C.      Detective Harris's Testimony**

Harris, a detective assigned to the Special Victims Unit at the Kern County Sheriff's Department, was assigned, in 2018, to a case involving defendant. On October 11, 2018, Harris interviewed defendant at the Ferry County jail in Washington State. Harris asked defendant, "So what . . . might [I] be here talking to you about[?]" and defendant replied, "It's pertaining—pertaining to my niece[, Doe]." Defendant

5.

continued, "Um, I never made penetration. [¶] . . . [¶] . . . Orally or through the, um, genitalia area. But, um, yeah just improper indecencies."

Specifically, defendant mentioned an incident where he was on the bed, watching television with Doe. Defendant was "being affectionate" with Doe and "guid[ed] her hand to" his penis. One year before, in a separate incident, defendant grabbed lubricant, guided Doe's hand to his penis, and ejaculated. Defendant mentioned only these two incidents to Harris.

### D.  Dr. Michael Musacco's Testimony

Musacco, a licensed psychologist, testified as an expert in child sexual abuse accommodation syndrome (CSAAS). Musacco testified there are five stages associated with CSAAS: (1) secrecy; (2) helplessness; (3) accommodation; (4) delayed disclosure; and (5) retraction. He explained CSAAS is "not a diagnosis[,] but rather a pattern of behaviors that [is] observed where child victims of sexual abuse behave[] differently than what adults would think."

### E.  Certified Prior Convictions

The People introduced into evidence certified documents from the Superior Court of Washington, County of Ferry, where defendant pled guilty to two counts of rape of a child. In the plea form, defendant admitted to having "sexual intercourse" with both a nine-year-old child and 12-year-old child.

## II.  Defense Case-In-Chief

Defendant testified he sexually abused Doe four separate times, but none of those incidents involved vaginal or anal penetration. Further, defendant testified he never took off Doe's clothes, nor did he ever digitally penetrate her, but did admit to trying to

6.

convince Doe to orally copulate him. He acknowledged he did not remember all the separate incidents because of his methamphetamine use.[5]

<h1 style="text-align:center"><u>DISCUSSION</u></h1>

Section 288, subdivision (a), defines a crime of specific sexual abuse. That crime occurs when a person who, "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child," "willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years." (*Ibid.*)

Section 288.5, subdivision (a), defines the crime of continuous sexual abuse of a child. "Any person who either resides in the same home with a minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with the child or three or more acts of lewd or lascivious conduct, is guilty of the offense of continuous sexual abuse." (*People v. Johnson* (2002) 28 Cal.4th 240, 242 (*Johnson*).)

Section 288.5, subdivision (c), prohibits charging section 288, subdivision (a), in the same proceeding with the charge of section 288.5, subdivision (a), unless the section 288, subdivision (a), offense occurred "outside the time period charged under [section 288.5, subdivision (a)] or the other offense is charged in the alternative." Accordingly, the crimes in counts 3 and 4 (§ 288, subd. (a)) were charged in the alternative to the crime charged in count 5 (§ 288.5, subd. (a)). Charging in the alternative does not, however, allow for multiple convictions.

In *Johnson*, the defendant was charged with violating section 288.5, subdivision (a), as well as with violating five other counts of specific sexual abuse involving the same victim occurring within the same time period. (*Johnson*, *supra*, 28 Cal.4th at p. 243.)

---

[5] Defendant later made a contradicting statement in which he agreed with the statement that "even when [he was] on methamphetamine and alcohol that [he was] fully aware of what [he was] doing."

7.

Our Supreme Court held that the charge-in-the-alternative language of section 288.5, subdivision (c), did not allow multiple convictions. (*Johnson*, at p. 248.) It affirmed the Court of Appeal's reversal of the five counts of specific sexual abuse. (*Ibid.*)

The People argue that counts 3 and 4 should be reversed and count 5 affirmed because count 5 "better describe[s] the circumstances and totality of the crimes."

Defendant argues in his opening brief that count 5 should be reversed and counts 3 and 4 affirmed because "count 5 was presented to the jury as the alternative charge."[6]

In *People v. Torres* (2002) 102 Cal.App.4th 1053, the defendant was "convicted of both a violation of section 288.5, and of multiple counts of other specific felony sex offenses committed against the same victim and in the same time period as the section 288.5 count." (*Id.* at p. 1055.) Pursuant to *Johnson*, the court held the multiple convictions could not stand. The question was which convictions should be vacated. (*Id.* at p. 1057.) To answer that question, the court looked to the legislative intent behind section 288.5. It concluded the Legislature " 'clearly intended that liability reflect culpability,' " so in deciding which convictions to vacate, a defendant should "stand[] convicted of the alternative offenses that are most commensurate with his culpability." (*Torres*, at p. 1059, italics omitted.)

---

[6] In his opening brief, defendant further contends if none of his convictions are dismissed, the matter must be remanded to allow the trial court to exercise its new discretion under section 654 (see Assem. Bill No. 518 (2021–2022 Reg. Sess.)), and that the minute order should be corrected to reflect that the trial court ordered the sentence on counts 3 and 4 stayed pursuant to section 654. We do not address these claims because they are moot in light of our disposition.

Additionally, to the extent trial counsel forfeited defendant's claims by failing to move for the dismissal of either the lewd and lascivious conduct convictions (counts 3 & 4) or the continuous sexual abuse conviction (count 5), he claims ineffective assistance of counsel. We need not address whether counsel was ineffective because we address this issue on the merits.

In *People v. Bautista* (2005) 129 Cal.App.4th 1431, the defendant entered a plea of no contest to, in part, one count of continuous sexual abuse of a child and five counts of procurement of that child for lewd and lascivious acts occurring during the same time period. (*Id*. at pp. 1433-1434.) Acknowledging that, in such a situation, " 'either the continuous abuse conviction or the convictions on the specific offenses must be vacated' " (*id*. at p. 1437), the court followed *Torres* and determined which " 'alternative offenses [were] most commensurate with [the defendant's] culpability.' " (*Bautista*, at p. 1437.) Because the evidence indicated the defendant subjected the child to numerous lewd or lascivious acts starting when the child was eight years old, and then continued to do so on a weekly basis over a period of five years (*id*. at pp. 1437-1438), conviction of only procurement was determined not to be "proportionate to the egregious criminal conduct in which [the defendant] engaged" (*id*. at p. 1438). The court affirmed the conviction of continuous sexual abuse and vacated the convictions of procurement. (*Ibid*.)

We are not persuaded by defendant's argument that count 5 should be vacated because it was presented to the jury as an alternative offense, and thus was designated to apply only if the jury acquitted him of counts 3 and 4. The jury was instructed count 5 was "charged as an alternative offense," however, as the People correctly point out, the jury was not required to decide between alternative charges, nor was it instructed count 5 applied only if defendant was acquitted on counts 3 and 4. This is not a case in which the jury was presented with two charges, one of which was a lesser included offense. (See *People v. Kurtzman* (1988) 46 Cal.3d 322, 324-325, 331 [holding a jury must acquit the defendant of the greater offense before returning a verdict on the lesser offense]; see also *People v. Avina* (1993) 14 Cal.App.4th 1303, 1313–1314 (*Avina*) ["Because section 288.5 could be violated without necessarily also violating section 288, the latter is not necessarily included within the former and no sua sponte instruction was required."].)

9.

In his reply brief, defendant adds two new arguments. He asserts that count 5 should be the conviction that is vacated because (1) " 'specific statutes prevail over general statutes' " and (2) the jury did not agree which three acts constituted the violation of section 288.5, subdivision (a), but did have to agree on the specific acts constituting counts 3 and 4.

First, we do not consider arguments that are presented for the first time in the reply brief. " ' "Obvious considerations of fairness in argument demand that [defendant] present all of his points in the opening brief. To withhold a point until the closing brief would deprive the [Attorney General] of his opportunity to answer it or require the effort and delay of an additional brief by permission. Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." ' " (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

Second, defendant's mere assertion that " 'specific statutes prevail over general statutes' " and citing to *People v. Ahmed* (2011) 53 Cal.4th 156, 159 [addressing whether § 654 applies to multiple enhancements for a single criminal act] fails to constitute a developed argument. As such, we decline to address it. (See *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 [an appellate court is not required to examine undeveloped claims, nor to make arguments for the parties]; see also *People v. Wharton* (1991) 53 Cal.3d 522, 563 [declining to consider the bare mention of an argument].)

Third, as to defendant's argument regarding what the jury was and was not required to agree on, he asserts that "because it is unknown which acts were relied upon for the continuous sexual abuse, but it is known which specific acts were relied upon for the convictions in counts 3 and 4, the convictions in counts 3 and 4 are 'most commensurate with [his] culpability.' " We "fail to see how convicting [defendant] only of [lewd and lascivious conduct] is in any way proportionate to the egregious criminal conduct in which [he] engaged." (*People v. Bautista*, *supra*, 129 Cal.App.4th at p. 1438.)

Instead, we agree with the People. In this case, continuous sexual abuse of a child (§ 288.5, subd. (a); count 5) is more commensurate with defendant's culpability. Doe testified to more than three acts of lewd and lascivious conduct that could have supported defendant's conviction. She testified the first incident occurred when she was seven years old, when defendant took out his penis and made her look at it while inside the bathroom of her apartment. Doe then testified that when she was eight years old, defendant grabbed her head and made her orally copulate him, and, in a separate incident, made her "stroke" defendant's penis underneath a blanket. Defendant corroborated this testimony when he testified that he tried to make Doe orally copulate him and told Detective Harris that Doe touched his penis and he "guided her hand around it." Doe also testified to an incident when she was eight years old when she fell asleep in the living room watching television, and later awoke on top of defendant, in his bed, wearing nothing but her shirt. Three of these four incidents occurred at her grandparent's house, where defendant lived. Doe told Barton there were six to eight separate incidents of abuse and testified that the last occurred when she was "turning nine years old." Additionally, it was defendant's continuous access to Doe in a home environment that allowed the abuse to occur. Thus, conviction under section 288.5, subdivision (a) is more commensurate with defendant's culpability than convictions for the two isolated acts of lewd and lascivious conduct. (See *Avina*, *supra*, 14 Cal.App.4th at p. 1311 ["While each act of abuse may be criminal, the harm done to the victim is cumulative and may be exacerbated not only by frequent repetition, but by the very circumstances of residential intimacy that make the course of conduct possible."].) As the *Avina* court stated:

> "The [section 288.5] statute requires residence with or recurring access to the child victim, as well as sexual abuse over a period of three months or more. It is aimed not at the stranger who happens to encounter the same victim three times, but at the molester, often a relative, family friend or lodger, who subjects a child to an extended course of repetitious abuse. The three-act requirement merely sets a 'baseline' for measuring the course of conduct, while '[t]he continuous-access requirement makes clear that the

11.

statute was targeted at the resident child abuse situation, where problems with generic testimony are most likely to arise, and was not to be used against individuals who have only transient contact with the alleged victim.' " (*Avina*, *supra*, 14 Cal.App.4th at pp. 1310–1311.)

This was not a case of isolated incidents of lewd and lascivious conduct, but rather "a *series* of acts occurring over a substantial period of time . . . on the same victim and . . . resulting in cumulative injury," exactly the type of conduct section 288.5, subdivision (a) was intended to punish. (*People v. Jones* (1990) 51 Cal.3d 294, 329 (dis. opn. of Mosk, J.).)

## DISPOSITION

The judgment is modified to vacate the convictions on counts 3 and 4 together with the sentences imposed but stayed on those counts. The trial court is directed to prepare a corrected abstract of judgment and transmit copies thereof to the appropriate authorities. As so modified, the judgment is affirmed.