Filed 1/6/25  P. v. Rankin CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>FRANK DELVON RANKIN,<br><br>    Defendant and Appellant. | F086488<br><br>(Super. Ct. No. BF181711A)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Erin Doering, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**STATEMENT OF THE CASE**

Frank Delvon Rankin was charged by amended information in count 1, with sexual intercourse of a child who is 10 years old or younger (Pen. Code, § 288.7, subd.

(a))[1]; in count 2, with oral copulation or sexual penetration of a child who is 10 years old or younger (§ 288.7, subd. (b)); in counts 3 and 5, with lewd and lascivious acts upon a child under the age of 14 (§ 288, subd. (a)); and in count 4, with continuous sexual abuse of a child under the age of 14 (§ 288.5, subd. (a)). Two aggravating sentencing factors were alleged as to each count, including that the victim was particularly vulnerable (Cal. Rules of Court, rule 4.421(a)(3)), and that Rankin took advantage of a position of trust or confidence to commit the offenses (Cal. Rules of Court, rule 4.421(a)(11)).

A jury found Rankin guilty as charged. In a bifurcated bench trial, the trial court found both aggravating sentencing factors to be true.

The trial court sentenced Rankin to an indeterminate term of 40 years to life, comprised of 25 years to life for count 1 and a consecutive 15 years to life for count 2. Rankin was sentenced to a consecutive determinate midterm of 12 years for count 4, and concurrent six years for both counts 3 and 5.

On appeal, Rankin contends the trial court abused its discretion and violated his right to due process and to present a defense when it precluded him from introducing evidence of the victim's mother's inappropriate behavior around the victim, and that the trial court erred when it overruled Rankin's objection to certain language in CALCRIM No. 1127. Rankin also contends the conviction on one count, count 5, must be reversed. We agree with this last contention but in all other respects affirm.

## STATEMENT OF THE FACTS

J. was born in May of 2007 and lived with her mother A.D. (mother) and Rankin from 2012 until 2018 or 2019. During this time, J. called Rankin "Uncle Frank" or "Pops," and Rankin called J. "Toots." Mother and Rankin had known each other for many years and the two considered each other "family" but never had a romantic

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2.

relationship. Rankin took J. to and from school, to soccer practice, to see her friends, or to go out to eat.

When J. was about six years old, Rankin took J.'s swimsuit bottom off while she was in her bed, and he then licked her vagina. The sexual behavior escalated over the years. Rankin would grab J.'s buttocks; touch her vagina with his fingers, mouth and penis; kiss her on the lips; put J.'s hands on his penis; put his fingers in her vagina; and had her lie on top of him naked while she rubbed her vagina on his penis.

These sexual acts, which Rankin referred to as "spending time," occurred daily; when they did not, Rankin "would be mad at [her] for it." On days the acts did occur, Rankin was "[l]oving, talkative, funny, [and] joking around." Rankin told J. not to tell anyone about the sexual acts, and J. did not because she was "scared." These sexual acts continued "every day" mother was not home.

Rankin and J. communicated via text messages and Snapchat. Anytime Rankin got mad, or the two discussed the sexual acts, Rankin would instruct J. to delete their conversations, which she did. The sexual assaults continued until approximately April of 2020.

In July of 2020, mother and Rankin took J. to Las Vegas to see Rankin's sister, S.R. During the visit, Rankin went to take a shower and left his phone with S.R., so she could speak with their father. After the call, mother scrolled through Rankin's phone and came across a video depicting J.'s bed comforter, which "sparked" mother's attention "immediately." Mother noticed that the video was recorded in December of 2019, when J. was about 13 years old. The video showed J. wearing a sweatshirt with nothing on from the waist down and the hood of her sweatshirt covering her face, which Rankin is tugging on and trying to get off of her face. "[J.] is laughing playfully at [Rankin]. [Rankin] then proceeds to playfully slap [J.'s] bare bottom and has the camera zoom in to her buttocks and vagina from the back side. After that, it appears that [Rankin] shakes

3.

[J.'s] legs in order to make her buttocks shake for the camera. [Rankin] then exits the room and the video stops."[2]

Mother showed the video to J. and asked for an explanation and how long "this has been going on." J., at first, denied anything because she was scared of Rankin, but then admitted Rankin had been touching her "for a long time." About 20 minutes later, Rankin returned to retrieve his phone and left the house. Mother had sent the video from Rankin's phone to her own phone. When Rankin found out mother had gone through his phone, he yelled at mother and tried to grab her.

When mother and J. returned from Las Vegas, mother called law enforcement. She also had J. medically examined, but the results were negative for any injuries.

*Defense*

Several witnesses testified on Rankin's behalf, testifying that they never observed any inappropriate behavior between Rankin and J.

Rankin testified in his own behalf and admitted he took the video of J. without her pants on, but only did so because he found her that way and wanted to show mother that J. was acting out. Rankin admitted that he never did show mother the video or even tell her about the incident. Although Rankin admitted that he slapped J.'s buttocks, he claimed he was being "playful" and not sexual. Rankin denied all of the sexual assault claims made by J.

---

[2]     The video has not been augmented into the record on appeal, nor was it described with much detail by any witness during trial. This description was provided by the prosecutor in their trial brief filed with the trial court on May 15, 2023. Rankin does not contest the description of the video on appeal and relies on the prosecutor's summary of the video in his opening brief.

*Rebuttal*

The investigating detective testified that Rankin admitted deleting information from his phone after mother saw the video of J. and before he handed the phone over to law enforcement for inspection.

*Surrebuttal*

Rankin testified that he only deleted photographs of himself, J. and mother from his phone.

## DISCUSSION

I.  DID THE TRIAL COURT ERR IN EXCLUDING TESTIMONY REGARDING MOTHER'S PERSONAL LIFE?

Rankin argues that the trial court violated his right to present a defense and erred when it denied his request to admit testimony from several witnesses that mother engaged in "inappropriate" behavior in front of J. Rankin contends the testimony was relevant to undermine J.'s credibility by establishing that her sexual knowledge came from mother, as opposed to her alleged sexual experiences with Rankin. We find no error on the part of the trial court.

*Procedural Background*

During trial, Rankin asked to admit evidence regarding mother's "behavior." According to Rankin, several witnesses indicated that they were familiar with mother's behavior, "how she's promiscuous and engages in sexual behavior in front of her child." Rankin argued that the testimony was relevant to show how J. would "know about certain sexual acts and engaged in similar behavior or just be exposed to that, how she gets the knowledge of that in generating or having these memories of past abuse."

The prosecutor objected, noting that J. was now 15 years old and there was no argument on behalf of the People that she was so young that there would be no other way she would be aware of "these types of acts" but for Rankin's actions. As such, the

promiscuity of mother was not relevant as it had no bearing on whether Rankin actually committed the crimes.

The trial court first stated that it had noted J.'s testimony drew distinctions between "what she knew now and her ability to relate what she described earlier, which would suggest that her knowledge … of what was going on and her sophistication is a more recent development than an earlier development." It then agreed with the People that the probative value would be "pretty minimal," and, even if there was some probative value, it would be "so minor" and greatly outweighed by any prejudicial effect. The trial court did allow defense counsel to "lodge copies of those reports with the Court as exhibits to preserve their testimony for purposes of appeal."

*Evidence Code Section 352 and Standard of Review*

Only relevant evidence is admissible (Evid. Code, § 350; *People v. Crittenden* (1994) 9 Cal.4th 83, 132) and, as a corollary principle, all relevant evidence is admissible unless excluded by constitution or statute (Evid. Code, § 351; see also Cal. Const., art. I, § 28, subd. (d)). Relevant evidence is defined as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

Evidence Code section 352 grants the trial court discretion to exclude relevant evidence if "its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "Under Evidence Code section 352, the probative value of the proffered evidence must not be substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People v. Cole* (2004) 33 Cal.4th 1158, 1195.)

A trial court's decision to admit or exclude evidence pursuant to Evidence Code section 352 is reviewed under the abuse of discretion standard. (*People v. Rogers* (2013)

6.

57 Cal.4th 296, 326.) "Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.) Reversal under the abuse of discretion standard is required only when the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner resulting in a miscarriage of justice. (*People v. Steskal* (2021) 11 Cal.5th 332, 357.)

<u>Analysis</u>

We find no abuse of discretion in the trial court's finding that evidence of mother's behavior had very minimal, if any, relevance to the case. The statements made by three defense witnesses to investigators, which Rankin used as a basis for requesting to put mother's behavior at issue, included statements that mother was "a woman who had a lot of men around her and that she would use them for money"; that mother would "often shirk her parental duties off on [Rankin] so that she could go out and party with men"; that mother had "random men around her residence exposing her daughter … to adult parties and interactions while consuming drugs and alcohol"; one witness described a video showing mother "on her knees giving a random man a blow job"; that J. was described as "acting grown"; and that mother "partie[d] a lot and expose[d] [J.] to adult behavior and circumstance[s] inappropriate for children."

We agree with the trial court that none of these statements have any tendency in reason to prove or disprove any disputed facts of consequence in this case. J. testified that Rankin licked her vagina; grabbed her buttocks; touched her vagina with his fingers, mouth, and penis; kissed her on the lips; put J's hands on his penis; put his fingers inside J.'s vagina; and had J. lie on top of him naked while she rubbed her vagina on his penis. None of the witness statements regarding mother's behavior would serve to establish that J. fabricated any of the claims against Rankin based on what mother exposed her to.

Even assuming J. witnessed mother engage in oral sex, as described in the video, J. expressly denied that Rankin ever put his penis in her mouth.

Rankin argues that the trial court failed to identify any prejudice in its section 352 analysis, or, if it did, that it did so erroneously identifying prejudice to mother rather than to one of the parties. The trial court, in its analysis, did identify potential prejudice to "women" as the basis for "restrictions on the laws changing to protect women … from certain areas on cross-examination that aren't directly relevant .…", but it also found that any probative value of the evidence of mother's behavior would be outweighed by prejudice. While Rankin argues about the wording of the trial court's denial of the evidence, a reading of the record indicates that the trial court met its requirement under Evidence Code section 352. (See *People v. Williams* (1997) 16 Cal.4th 153, 214 ["[W]hen ruling on a section 352 motion, a trial court need not expressly weigh prejudice against probative value, or even expressly state it has done so. All that is required is that the record demonstrates the trial court understood and fulfilled its responsibilities under Evidence Code section 352."].)

While Rankin argues that *People v. Daggett* (1990) 225 Cal.App.3d 751, supports his argument, we disagree. In *Daggett,* the defendant was charged with oral copulation and sodomy of a child. The child was, himself, also charged with molesting two children and, in the course of the investigation, it was determined that the child had been molested by two older children on prior occasions. (*Id.* at p. 754.) The defendant in *Daggett* asked that the evidence of the child's earlier molestations be admitted to establish the child's ability to "describe the acts" the defendant was accused of. The trial court denied the request. (*Ibid.*) On appeal, the court reversed and found Evidence Code section 782 permitted inquiry into a child victim's prior molestation to counteract the inference that, if the child accurately described the acts, he or she "must have learned of these acts through the defendant." (*Daggett, supra,* at p. 757.)

8.

Here, however, *Daggett* is inapplicable because it involved the exclusion of evidence of the victim's prior sexual experiences, not the prior sexual experience of a victim's relative. Nor are mother's alleged behaviors similar to the experiences J. testified to. The nonarbitrary exercise of discretion to exclude evidence does not infringe a defendant's due process rights. (See *People v. Garcia* (2018) 28 Cal.App.5th 961, 969 ["Although a defendant has a ' "general [constitutional] right" ' to offer a defense through the testimony of his or her witnesses, a state court's exclusion of defense evidence under ordinary rules of evidence — including Evidence Code section 352 — generally does not infringe upon this right."].) Thus, since we find that the trial court did not abuse its discretion under the ordinary rules of evidence in excluding evidence, we necessarily find no due process violation as a result of that exclusion.

II.      DID THE TRIAL COURT ERR IN GIVING CALCRIM NO. 1127?

Rankin contends the trial court erred in overruling his objection to the inclusion of additional language into CALCRIM No. 1127, the instruction for the charge of sexual intercourse with a minor 10 years of age or younger, in violation of section 288.7, subdivision (a). We find no prejudicial error.

*Background*

During her testimony, J. was asked specific questions about her claim that Rankin made her rub her vagina on his penis. The prosecutor asked J. whether she was "familiar with the labia or the lips of the vagina," to which J. confirmed that she was. J. further testified that Rankin's penis was "right on top" of that area when she would lie on top of him and rub her vagina on his penis. J. had also told the investigating detective that Rankin's penis would go "partially in" her vagina on a few of those occasions. When explaining this to the detective, J. "used her hand and placed her finger just to the inside of her hand" to show "how far [Rankin's] penis" entered into her vagina.

During discussion on jury instructions, the prosecutor asked for additional language to be added to CALCRIM No. 1127, wherein the jury would be instructed

9.

"regarding penetration of the genital opening, referring to the penetration of the labia majora, not the vagina ...."  Rankin objected to the additional language because "the instructions should ... speak for themselves."

The trial court granted the prosecution's request, holding that the additional language conformed with the law under the facts of this case.  The jury was therefore instructed on CALCRIM No. 1127 as follows:

> "The defendant is charged in Count 1 with engaging in sexual intercourse with a child ten years of age or younger, in violation of Penal Code section 288.7[, subdivision] (a).

> "To prove the defendant is guilty of this crime, the People must prove that, one, The defendant engaged in the act of sexual intercourse with [J.]; two, when the defendant did so, [J.] was ten years of age or younger; three, at the time of the act, the defendant was at least 18 years old.

> "Under the law, a person becomes one year older as soon as the first minute of his birthday has begun.

> "Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis. Ejaculation is not required.

> "*Penetration of the genital opening refers to penetration of the labia majora, not the vagina*."  (Italics added.)

<u>Forfeiture of Ability to Challenge the Instruction</u>

Rankin now contends the trial court erred when it failed to provide a definition for the term "labia majora" within the instruction as given.  While Rankin objected to the additional language, italicized above, he did not request that the trial court provide such a definition.  Failure to do so forfeits Rankin's ability to challenge this part of the jury instruction on appeal.  (*People v. Kaihea* (2021) 70 Cal.App.5th 257, 265 ["[w]hen an instruction as given is correct in law, it is incumbent on defendant to request clarifying language, and his failure to do so forfeits the issue"].)

10.

*Claim of Ineffective Assistance of Counsel*

Rankin argues, in the alternative, that, if the issue has been forfeited, he received ineffective assistance of counsel. A cognizable claim of ineffective assistance of counsel requires a showing that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed … by the Sixth Amendment." (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) To prevail on an ineffective assistance of counsel claim, a defendant must establish that counsel's performance prejudiced his defense. (*Ibid*.) As discussed, below, this Rankin cannot do.

*Applicable Law*

"A claim of instructional error is reviewed de novo." (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) "In assessing a claim of instructional error, we examine the instructions as a whole. The test we apply is whether there is a reasonable likelihood the jurors would have understood the instruction in a manner that violated a defendant's rights." (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1246.) "[W]hen terms have no technical meaning peculiar to the law, but are commonly understood by those familiar with the English language, instructions as to their meaning are not required." (*People v. Anderson* (1966) 64 Cal.2d 633, 639.)

We presume that jurors are intelligent individuals capable of understanding instructions and applying them to the facts of the case before them. (*People v. McKinnon* (2011) 52 Cal.4th 610, 670.)

*Analysis*

Rankin contends that the "term 'labia majora' is not one that is commonly understood or used in the vernacular the way, say, the terms 'rectum' and 'buttocks' are" without "evidentiary or instructional guidance." We disagree.

"While [the jurors may] not be able to define [the term] in exact, scientific language," there is no reason for this Court to assume that the jurors could not understand it "in terms of function and location." (*People v. Cantrell* (1992) 7 Cal.App.4th 523,

11.

544.) Here, the jury instruction distinguished between penetration of the labia majora and the vagina, demonstrating to the jurors that there was a difference between the two areas. In addition, the prosecutor explained to the jury that "[p]enetration of the genital opening refers to penetration of the labia majora not the vagina. What you have to remember is [Rankin] doesn't have to actually penetrate the vaginal hole. He simply has to penetrate the lips of her vagina. That's why I posed the questions to her regarding the lips of her vagina, how far did he go, and you also heard from Detective Poteete that she had previously described penetration not just of the lips of her vagina, but even further actually into the vaginal hole as well."

Nor is there any evidence in the record that the jurors struggled to understand this distinction. The jurors did not ask any questions about this instruction or about J.'s testimony regarding the relevant details.

In any event, Rankin cannot show prejudice. To the extent CALCRIM No. 1127 would be considered as "incomplete" without a definition of "labia majora," the error would be assessed for prejudice under *Chapman v. California* (1967) 386 U.S. 18, 24, where the question is whether the error was harmless beyond a reasonable doubt. (*People v. Bell* (2009) 179 Cal.App.4th 428, 439.)

Here, Rankin cannot show any resulting prejudice from the alleged instructional error. The jury was instructed that it could find Rankin engaged in sexual intercourse with J. in count 1 if his penis penetrated her vagina, regardless of how slight the penetration was. J.'s uncontroverted testimony and reports were that Rankin's penis had been "right on top" of her labia majora when she laid on top of Rankin to rub her vagina on his penis, and also that Rankin's penis would go "partially in" her vagina on a few of those occasions. J. also demonstrated what she meant by placing her fingers "just to the inside of her hand" to show "how far [Rankin's] penis" entered into her vagina.

Thus, the meaning of labia majora had almost nothing to do with the jury's ultimate determination that Rankin engaged in sexual intercourse in count 1 because the

12.

evidence showed that Rankin's penis had gone "partially in" her vagina. This meets the definition of sexual intercourse without even requiring the jury to consider whether Rankin's penis penetrated the labia majora (although this would also necessarily have happened in this case). Thus, even if the jury was instructed on the meaning of labia majora, it would not have changed the outcome of its determination that Rankin had engaged in sexual intercourse with J. as defined under CALCRIM No. 1127.

III.    CONVICTIONS ON COUNTS 4 AND 5

The prosecution charged and the jury convicted Rankin, in relevant part, on one count of continuous sexual abuse (§ 288.5, subd. (a)) (count 4) and committing a lewd and lascivious act upon a child under the age of 14 (§ 288, subd. (a)) (count 5), both alleged to have occurred during the same time period and involving the same victim, J. The second amended information specifically alleged in count 4 that Rankin committed continuous sexual abuse of J. (§ 288.5, subd. (a)) between May 24, 2018, and July 4, 2020. In count 5, it was alleged Rankin committed a lewd or lascivious act upon J. (§ 288, subd. (a)) between May 24, 2018, and July 4, 2020. These two counts were not alleged in the alternative. In closing, the prosecutor admitted that the acts for count 4 occurred when J. was "11 to 13" between 2018 and 2020, and that count 5 dealt "specifically with the video" from December 2019 when J. was 12 years old. Therefore, the time periods for count 4 and count 5 were exactly the same and alleged against the same victim.

Rankin was sentenced to, inter alia, a consecutive midterm of 12 years for count 4, and a concurrent midterm of six years for count 5.

Rankin argues these convictions violate section 288.5, subdivision (c), which prohibits dual convictions for continuous sexual abuse and additional sex offenses involving the same victim during the same time period.[3] The People concede the case

_____

[3]    Section 288.5, subdivision (c) provides in relevant part that when the defendant is charged with continuous sexual abuse of a child, "[n]o other act of substantial sexual

was prosecuted in violation of section 288.5, subdivision (c), and argue Rankin received ineffective assistance of counsel for counsel's failure to demur to the pleadings. Both parties ask that we reverse the conviction on count 5, which we will do, as we explain below.

*Applicable Law and Analysis*

Both parties cite to *People v. Goldman* (2014) 225 Cal.App.4th 950, 956-957, in which the court held that a violation of section 288.5, subdivision (c) is a pleading defect which must be challenged by demurrer to preserve the issue for appeal. Rankin contends *Goldman* was wrongly decided, and the People allege that, because counsel failed to demur to the pleadings, the issue was forfeited and Rankin received ineffective assistance of counsel. Recently, this court, in *People v. Patton* (2024) 101 Cal.App.5th 922 (*Patton*) disagreed with "*Goldman* that section 288.5, subdivision (c), is merely a 'charging prohibition.' " (*Id.* at pp. 927-928.)

As we reasoned in *Patton*, our Supreme Court explained in *People v. Johnson* (2002) 28 Cal.4th 240, 245-248 (*Johnson*) that section 288.5, subdivision (c), by prohibiting multiple charges, also prohibits *multiple convictions* for continuous sexual abuse of a child and for the discrete sexual offenses underlying the continuous sexual abuse conviction. (*Patton, supra,* 101 Cal.App.5th at p. 928; see also *People v. Rojas* (2015) 237 Cal.App.4th 1298, 1308-1309 (*Rojas*) [interpreting *Johnson* to preclude multiple convictions]; *People v. Bautista* (2005) 129 Cal.App.4th 1431, 1436 (*Bautista*) [same]; *People v. Torres* (2002) 102 Cal.App.4th 1053, 1055 (*Torres*) [same].)

Consequently, any sentence violating section 288.5, subdivision (c) — imposing punishment for a violation of section 288.5 overlapping with a discrete sexual offense —

conduct [including sexual intercourse or lewd acts] involving the same victim may be charged in the same proceeding ... unless the other charged offense occurred outside the time period [alleged with respect to the continuous sexual abuse charge] or the offense is charged in the alternative."

14.

is unlawful.  (*Johnson, supra,* 28 Cal.4th at p. 248.)  "[I]f an accusatory pleading is improper (i.e., a count alleging violation of section 288.5 is joined, and *not* — as subdivision (c) requires — charged alternatively, with one or more counts alleging specific sexual offenses), then the multiple convictions predicated thereon cannot stand, and either the continuous abuse conviction or the convictions on the specific offenses must be vacated."  (*Id.* at p. 245.)

We are bound by *Johnson's* interpretation of section 288.5.  (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455.)  Logically, if section 288.5 prohibits multiple convictions predicated on an operative pleading in violation of section 288.5, subdivision (c), then a defendant *cannot* forfeit a challenge to those convictions by failing to demur to the underlying pleading.  (*Patton, supra,* 101 Cal.App.5th at p. 928.)

*Remedy*

Rankin and the People ask that we vacate the specific sexual offense count, count 5.  Courts have held that where a conviction must be vacated for violating section 288.5, subdivision (c), the defendant shall be left "standing convicted of the alternative offenses that are most commensurate with [his] culpability."  (*Torres, supra,* 102 Cal.App.4th at p. 1059; *Bautista, supra,* 129 Cal.App.4th at pp. 1437-1438.)  Generally, this means "upholding whichever conviction[s] resulted in the greater aggregate penalty and vacating the less serious count[s]."  (*Rojas, supra,* 237 Cal.App.4th at p. 1309; *Torres, supra,* 102 Cal.App.4th at p. 1058.)

For count 4, a violation of section 288.5, the court sentenced Rankin to the middle term of 12 years.  For count 5, the court sentenced Rankin to a concurrent six-year middle term.  The former punishment is "most commensurate with [defendant's] culpability."  (*Torres, supra,* 102 Cal.App.4th at p. 1059.)  Thus, we vacate the conviction on count 5.

When a count is vacated, the typical remedy is to remand for resentencing so that the trial court may restructure its sentencing choices to compensate for the lost count.

15.

(*People v. Francis* (2017) 16 Cal.App.5th 876, 887.) However, where "the trial court imposed the maximum possible sentence" and "there are no sentencing choices to restructure, it is appropriate for us to modify the sentence on appeal." (*Ibid.*)

Here, the trial court imposed the maximum possible sentence on each count. Presumptively, the middle term is the maximum term that may be imposed and it may be exceeded "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term …." (§ 1170, subd. (b)(1) & (2).) The underlying alleged aggravating factors were found true as to Rankin. The trial court found two factors in mitigation. The trial court stated that it found the factors, "two in mitigation and two in aggravation, to be true," and "weigh[ed] those equally, which would lead … to a midterm sentence on those counts where there is a sentencing range." Thus, we vacate the conviction on count 5 and order the trial court to prepare an amended abstract of judgment.[4]

## DISPOSITION

The judgment is modified to vacate Rankin's conviction on count 5. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment striking the sentence for count 5 and to forward a certified copy of the amended abstract of judgment to all relevant authorities.

---

[4] It should be noted that the abstract of judgment lists the term for count 5 at two years, which was also the term recommended by the probation report. The reporter's transcript makes mention of "one-third the midterm", but then stated it was imposing the midterm of six years on that count. In either event, both a six-year term and/or a two-year term are lesser terms to the 12-year term imposed on count 4.

FRANSON, Acting P. J.

WE CONCUR:

PEÑA, J.

DE SANTOS, J.