Filed 2/16/23  P. v. Donovan CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C094550 |
| Plaintiff and Respondent, | (Super. Ct. No. 18CF05509) |
| v. | |
| ROBERT MACK DONOVAN, | |
| Defendant and Appellant. | |

A jury found defendant Robert Mack Donovan guilty of continuous sexual abuse of A.D. (count 1), sexual penetration of a child, A.D., 10 years old or younger (count 2), oral copulation of a child, A.D., 10 years old or younger (count 3), and oral copulation or sexual penetration of a child, M.M., 10 years old or younger (count 6).  The prosecution, however, failed to charge count 1 in the alternative to counts 2 and 3 as required by Penal

Code section 288.5, subdivision (c).[1] At sentencing, the trial court vacated the conviction on count 1. The court sentenced defendant to an aggregate term of 45 years to life, consisting of terms of 15 years to life on counts 2, 3, and 6.

On appeal, defendant asserts the trial court erred by vacating the conviction on count 1 and imposing sentence on counts 2 and 3 instead of imposing sentence on count 1 and vacating the convictions on counts 2 and 3. He further asserts the abstract of judgment must be corrected to accurately reflect the nature of his convictions.

We conclude the trial court did not err by vacating the conviction on count 1 and imposing sentence on counts 2 and 3, and therefore we will affirm the judgment. However, we will order the abstract of judgment amended to reflect the specific nature of defendant's convictions.

## BACKGROUND

A third amended information charged defendant with continuous sexual abuse of A.D. (§ 288.5, subd. (a); count 1); oral copulation or sexual penetration of a child, A.D., 10 years old or younger (digital penetration) (§ 288.7, subd. (b); count 2); oral copulation or sexual penetration of a child, A.D., 10 years old or younger (oral copulation) (§ 288.7, subd. (b); count 3); forcible lewd act upon a child, M.W. (§ 288, subd. (b)(1); counts 4 & 5); and oral copulation or sexual penetration of a child, M.M., 10 years old or younger (§ 288.7, subd. (b); count 6). The information alleged the aggravating circumstance that, in connection with counts 1, 4, and 5, defendant committed the offenses against multiple victims under the age of 14. (§ 667.61, subds. (e)(4), (j)(2).) The information further alleged as to count 1 that A.D. was under 14 years old and defendant had substantial sexual conduct with A.D. (§ 1203.066, subd. (a)(8).) Counts 1 and counts 2 and 3 were not charged in the alternative.

---

[1] Further undesignated statutory references are to the Penal Code.

# I

## *The Prosecution Case*

A.  *Offenses Involving M.M.*

M.M. was 10 years old at the time of the trial. She testified that, when she was younger and lived in California, defendant sat her down on a chair or table, pulled down her pants, pulled down her underwear, held her hips, and kissed her in between her legs. It was an "adult kiss," meaning his mouth was open. Approximately two months after M.M. and her mother moved to Nevada, M.M. told her mother there had been an incident with defendant. M.M.'s mother filed a police report. It stated, in part, that M.M. told her mother defendant "gave [M.M.] adult kisses on her hoo-hoo. When I asked her what she meant by adult kisses, she told me 'Kisses where your mouth is open wide and you wiggle your tongue all around.' "

The prosecution played a Child Abuse Response Team (CART) interview with M.M. for the jury. She told the interviewer defendant pulled down her pants and underwear and kissed her on what she called her "Hoo-hoo," where she crossed her legs. She felt his tongue on her hoo-hoo.

B.  *Offenses Involving M.W.[2]*

M.W. testified that, when defendant lived with her and her mother, he tried to do things she did not want him to do. He held her and touched her under her clothes on her vagina with his hands. This occurred on more than one occasion. It happened "a lot." Defendant also would sometimes lie down in bed with M.W., which made her uncomfortable. M.W. also testified defendant threatened to hurt her if she told anyone about what he did.

---

[2]  As stated *post*, the jury found defendant not guilty of the two counts involving M.W., counts 4 and 5.

The prosecution played a CART interview with M.W. for the jury. M.W. was 12 years old at the time of the interview. She told the interviewer defendant held her down and touched her "boobs and [her] private part" with his hands. He did the same thing on a second occasion. On both occasions, defendant told her he would hurt her if she told anyone what he had done.

C.    *Offenses Involving A.D.*

A.D. was defendant's biological child. A.D. did not meet defendant, however, until he was at least five years old.[3] Initially, people identified defendant as a family friend. A.D. only later learned defendant was his father. A.D. visited with defendant almost every weekend.

At some point, after defendant had moved from an apartment to a house, defendant began to do things to A.D. in a shed that made A.D. uncomfortable. Defendant removed A.D.'s pants and touched A.D.'s vaginal area. Defendant's fingers did not penetrate A.D.'s vagina, but touched the outer portion of A.D.'s vagina. Defendant also touched A.D.'s breasts and had A.D. suck defendant's penis.

A.D. more specifically testified defendant would rub A.D.'s vagina with his fingers "[a]lmost every weekend." Defendant did so possibly more than 20 times. He would have A.D. put defendant's penis in A.D.'s mouth. Defendant did that more than five times. He would also "[q]uite often" have A.D. use A.D.'s hands on defendant's penis. Defendant also put his mouth on A.D.'s vaginal area and licked it with his tongue. Defendant did so more than 10 times. Defendant also rubbed his penis on A.D.'s vaginal area. Defendant did so fewer than five times. At some point, defendant attempted to put his penis in A.D.'s vagina but he was unable to do so. Defendant kissed A.D. on the lips,

_____

[3]    A.D. was born female but, as of approximately one year prior to trial, identified as male. A.D.'s preferred pronouns are he/him.

4

breasts, stomach, and vagina.  Defendant would also sometimes get into bed with A.D. and he would touch A.D.'s vagina and breasts under the clothing.

At some point, based on the information A.D. supplied, A.D.'s grandmother called the sheriff's office.  She obtained a restraining order protecting A.D. against defendant.

The prosecution played a recording of a CART interview with A.D. for the jury. A.D. was 10 years old at the time.  The interviewer asked A.D. about the reason for the interview, and A.D. responded, "[m]y dad touched me in a place that was inappropriate" beginning when A.D. was seven or eight years old.  A.D. told the interviewer defendant would call A.D. into a shed and he would start touching A.D. underneath A.D.'s clothing. Defendant would touch A.D. on "inappropriate parts" of A.D.'s body, including A.D.'s breasts and crotch.  Defendant also kissed and licked A.D. "[i]n those parts."  Defendant also made A.D. touch defendant's "inappropriate part."  Defendant would also do these things with A.D. in the bedroom.  Defendant told A.D. he loved A.D. "in a lover kind of way and he wanted to do lover like things to" A.D.  A.D. told the interviewer the last time the touching took place was "a couple months" prior to the CART interview.

A.D. testified he did not always "recall things accurately."  A.D. also acknowledged possibly having "false memory," or memories of things that did not happen.  However, A.D. also testified to being able to distinguish between real and false memories because real memories are "so vivid."  A.D.'s memories of the events involving defendant were vivid.

Lieutenant Christopher Oakley was the primary investigating officer on this case. He worked with District Attorney Investigator Jake Hancock.

At some point, Lieutenant Oakley, posing as A.D., engaged in a text message conversation with defendant on Kik, a social media communication application that erases messages when the user logs out.  Oakley took screenshots of the Kik exchange, and the trial court admitted into evidence a document containing those photographs.  For present purposes, it is sufficient to say, as acknowledged by defendant in his briefing, that

5

the Kik text message exchange "revealed a sexual relationship" had occurred between defendant and A.D.  The exchange also made clear defendant's concerns that the text message exchange was a "setup," about whether A.D. was going to tell anyone about the relationship, and his reminders that A.D. delete the text messages when they were finished.

Lieutenant Oakley and Investigator Hancock thereafter interviewed defendant. During the interview, Oakley presented defendant with the screenshots of the Kik text message exchange, and defendant acknowledged being the other participant in that exchange.  During the interview, when Hancock asked if defendant expressed love for A.D. in a way society deemed inappropriate, defendant responded, " 'Sure.' "  Defendant admitted he had touched A.D.'s breasts over A.D.'s clothing and that he had kissed A.D. Defendant said A.D. was lying about the other things and said he would not sexually assault A.D.  The prosecution played clips of the interview for the jury.

During the interview, Investigator Hancock suggested defendant write a letter to A.D.  The trial court admitted the letter, People's exhibit 28, into evidence.  In the letter, defendant apologized to A.D. "for the pain and any issues" and "for everything."  In a second document, People's exhibit 27, defendant wrote:  "I . . . [c]onfess to the charges that w[ere] ma[de] about me."

II

*The Defense Case*

Defendant testified he had "ADD ADHD" and anxiety disorder.  He had been hospitalized with anxiety attacks.  One trigger for such events for defendant was confrontation.  He testified that as his interview with law enforcement progressed, he began to feel very uncomfortable and he "started having issues focusing where communication, it starts getting limited."

Defendant testified he wrote the letter in which he "[c]onfess[ed] to the charges that w[ere] ma[de] about me" because, at that point, he "felt that there was no use trying

6

to communicate. I tried explaining from the beginning that I didn't do these things, and it kept getting pushed on me that I pretty much was lying, that [Lieutenant Oakley] knew that these things happened." Defendant further explained: "I felt pretty much that there was no use . . . trying to debate it, trying to express anything. I wanted to be done with it." Defendant emphasized that, in his letter to A.D., he did not apologize for committing sexual assault against A.D. The reason he did not make any specific admissions to sexual abuse was that he "didn't do it." Defendant denied committing any act of sexual abuse with M.M, A.D., or M.W.

Dr. William O'Donohue testified as an expert in child abuse response protocol and forensic interviews. Among other things, he testified about suggestibility. Through leading, suggestive, and repetitive questions, individuals can form false memories. He testified that children are suggestible and can form false memories. Dr. O'Donohue also testified it would be a "red flag" if a child said he or she had false memories and remembered things that did not happen.

A former girlfriend testified defendant's behavior towards A.D. was normal and never inappropriate. On the occasions she was with defendant and A.D., she observed nothing negative, and A.D. never seemed uncomfortable. She also testified defendant is someone who, when faced with confrontation, "remove[s] himself from the scene" and is not one to fight or argue.

Three of defendant's acquaintances testified they had been around defendant and A.D. and that they never saw defendant behave inappropriately towards A.D. Two of those acquaintances also testified defendant was someone who generally tried to avoid conflict.

### III

*Verdicts and Sentencing*

The jury found defendant guilty on count 1, continuous sexual abuse of A.D. (§ 288.5); count 2, sexual penetration of a child, A.D., 10 years old or younger (§ 288.7,

7

subd. (b)); count 3, oral copulation of a child, A.D., 10 years old or younger (§ 288.7, subd. (b)); and count 6, oral copulation of a child, M.M., 10 years old or younger (§ 288.7, subd. (b)). The jury found defendant not guilty on counts 4 and 5, forcible lewd act upon a child, M.W., and on lesser included offenses. (§ 288, subd. (b)(1).) The jury found true the special allegation as to count 1 that A.D. was under the age of 14 years old and defendant had substantial sexual conduct with A.D. (§ 1203.066, subd. (a)(8).) The jury found not true the special allegation in connection with counts 1, 4, and 5, that defendant committed the offenses against multiple victims under the age of 14 years old.

In her sentencing brief, the prosecutor asserted, in effect, that, pursuant to section 288.5, subdivision (c), count 1 was charged in the alternative to counts 2 and 3, but the jury found defendant guilty on all three counts.[4] She asserted the trial court "should vacate the . . . section 288.5 conviction and sentence the defendant for the two . . . section 288.7 violations as to A.D.," resulting in a term of 45 years to life in prison. The prosecutor stated: "Were the Court to vacate the two charges of . . . section 288.7 instead of . . . section 288.5, this would result in a sentence of 15 to life plus 16 years. This would result in the unjustified windfall for the defendant and not be commiserate [*sic*] with the defendant's culpability. The appropriate sentence based upon the defendant's culpability for molesting A.D. and M.M. is 45 year to life, thus the People are requesting the court vacate the . . . section 288.5 charge."

At sentencing, defense counsel argued the trial court should strike counts 2 and 3 and sentence defendant on count 1. Defense counsel asserted this would result in defendant receiving a determinate term of 16 years before starting a 15-year

---

[4]     As stated, these offenses were not charged in the alternative. Additionally, the trial court did not instruct the jury with CALCRIM No. 3516 that count 1 was charged as an alternative count to counts 2 and 3.

indeterminate term, a sentence that could not be characterized as an "unjustified windfall."

The trial court granted the prosecution's request and vacated the conviction on count 1. The trial court sentenced defendant to an aggregate indeterminate term of 45 years to life in prison, consisting of terms of 15 years to life on counts 2, 3, and 6.

## DISCUSSION

## I

### *Violation of Section 288.5, Subdivision (c) and the Authorized Remedies*

Section 288.5, subdivision (c) provides, in pertinent part: "No other act of substantial sexual conduct, as defined in subdivision (b) of Section 1203.066, with a child under 14 years of age at the time of the commission of the offenses, or lewd and lascivious acts, as defined in Section 288, involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative."

The Attorney General concedes section 288.5, subdivision (c) applies and that the conviction on count 1 in addition to the convictions on counts 2 and 3 violated that subdivision. The acts alleged in counts 2 and 3 were not alleged to have occurred outside the time period charged under section 288.5, subdivision (a) in count 1. (§ 288.5, subd. (c).) The prosecutor did not charge count 1 in the alternative to counts 2 and 3. (*Ibid*.) Thus, the primary issue presented on this appeal is the appropriate remedy under these circumstances.

A.  *Forfeiture*

*People v. Goldman* (2014) 225 Cal.App.4th 950 (*Goldman*), involved a similar claim of a section 288.5, subdivision (c) error. In *Goldman*, relying on, among other things, sections 1004 and 1012, another panel of this court concluded that, because the

9

defendant did not demur to the information, he forfeited the issue.[5]  The *Goldman* court further concluded the defendant was not denied the effective assistance of counsel because it was not reasonably probable he would have obtained a more favorable result had defense counsel demurred to the information.  (*Goldman* at pp. 952-953.)

Based on *Goldman*, the Attorney General asserts defendant's contention is forfeited.  Defendant disagrees, preemptively in his opening brief and responsively in his reply brief.  Defendant asserts *Goldman* was incorrectly decided.  Defendant also asserts the issue affects his substantial rights and thus we should not apply the forfeiture rule to bar his claim, and that the prosecution should be estopped from asserting forfeiture based on the prosecutor's incorrect representation in a sentencing brief that the counts were charged in the alternative.

We note that, in the roughly nine years since another panel of this court decided *Goldman*, no published case has relied on it for the forfeiture issue addressed here.  In any event, rather than delving into the merits of defendant's arguments concerning whether *Goldman* was properly decided and whether he forfeited his contention, we find it more expeditious to address defendant's contention on its merits.  (See *People v. Williams* (1998) 17 Cal.4th 148, 161 fn. 6 [appellate court has authority to exercise its discretion to reach a forfeited issue that is not related to admission or exclusion of evidence]; accord, *People v. Monroe* (2022) 85 Cal.App.5th 393, 400.)  We exercise our

_____

[5]    Section 1004, subdivision 5, provides a defendant may demur to an accusatory pleading at any time prior to entry of a plea when it appears on the face of the pleading that "it contains matter which, if true, would constitute a . . . legal bar to the prosecution."

Section 1012 provides:  "When any of the objections mentioned in Section 1004 appears on the face of the accusatory pleading, it can be taken only by demurrer, and failure so to take it shall be deemed a waiver thereof, except that the objection to the jurisdiction of the court and the objection that the facts stated do not constitute a public offense may be taken by motion in arrest of judgment."

discretion to consider defendant's claim on the merits.  (See *People v. Cota* (2020) 45 Cal.App.5th 786, 794 ["We exercise our discretion to consider Cota's claim on the merits, notwithstanding any possible forfeiture"], citing *Williams*, at p. 161, fn. 6.)

B.      *The Parties' Contentions*

Defendant asserts the trial court erred by vacating the conviction on count 1 (continuous sexual abuse of A.D.; § 288.5) and imposing judgment on counts 2 (sexual penetration of A.D.; § 288.7, subd. (b)) and 3 (oral copulation of A.D.; § 288.7, subd. (b)).  Defendant asserts the convictions on counts 2 and 3 were obtained in violation of the prosecution's statutory charging authority (see § 288.5, subd. (c)), requiring reversal of those convictions.  Defendant asserts where, as here, the prosecution exceeded its charging authority and obtained improper convictions as a result, "it is not within the discretion of the court–exercising judicial functions–to determine that the conviction should stand."  Therefore, according to defendant, "the trial court's decision to impose judgment on counts 2 and 3 (and vacate the conviction on count 1) based on an evaluation of [defendant's] culpability resulted in an abuse of discretion because it interfered with the Legislature's broad discretion in enacting penal statutes."  According to defendant, it is counts 2 and 3 that must be vacated.

The Attorney General correctly concedes count 1 should have been charged in the alternative to counts 2 and 3.  However, the Attorney General further asserts the trial court properly remedied the error by vacating the conviction on count 1 and imposing judgment on counts 2 and 3.

C.      *The Appropriate Remedy for the Section 288.5, Subdivision (c) Violation*

In *People v. Johnson* (2002) 28 Cal.4th 240 (*Johnson*), the Supreme Court stated: "The premise of the Court of Appeal's decision is that if a defendant may be *charged* with two different offenses only in the *alternative*, then he or she may not properly be *convicted* of those offenses in the *conjunctive*.  By the Court of Appeal's reasoning, if an accusatory pleading is improper (i.e., a count alleging violation of section 288.5 is joined,

and *not*–as subdivision (c) requires–charged alternatively, with one or more counts alleging specific sexual offenses), then the multiple convictions predicated thereon cannot stand, and either the continuous abuse conviction or the convictions on the specific offenses must be vacated." (*Id.* at p. 245.)  The Supreme Court went on to conclude:  "The information in this case failed to comply with section 288.5, subdivision (c).  The multiple convictions predicated on this pleading thus are inconsistent with the statute, and the Court of Appeal correctly reversed the convictions on counts 2 through 6." (*Id.* at p. 248.)  Counts 2 through 6 in *Johnson* involved specific sexual offenses whereas count 1 was for continuous sexual abuse under section 288.5, subdivision (a). (*Johnson*, at p. 243.)

Johnson did not address whether the Court of Appeal, as an alternative remedy, could have properly reversed the conviction on the continuous sexual abuse conviction in count 1 and let remain the convictions of specific sexual offenses in counts 2 through 6. The Supreme Court determined only that the defendant could not stand convicted on *both* the continuous sexual abuse count and the counts based on discrete acts.  " 'It is axiomatic that cases are not authority for propositions not considered.' " (*Howard Jarvis Taxpayers Assn. v. Newsom* (2019) 39 Cal.App.5th 158, 169, quoting *People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10.)

Soon after the Supreme Court decided *Johnson*, in *People v. Torres* (2002) 102 Cal.App.4th 1053 (*Torres*), the Court of Appeal noted that, in that case, the pleading failed to allege the continuous sexual abuse count and 10 specific counts alleged to have occurred during the same period in the alternative.  (*Id.* at p. 1057.)  Relying on *Johnson*, the Court of Appeal concluded the defendant could not "stand convicted of both." (*Ibid.*, citing *Johnson, supra*, 28 Cal.4th at pp. 245, 248.)  The court continued:  "The question remains, however, *which* convictions should be vacated?" (*Torres*, at p. 1057.)

Like defendant here, the defendant in *Torres* contended that *Johnson* required "that whenever multiple convictions are obtained in violation of section 288.5,

12

subdivision (c), only the conviction for continuous sexual abuse may stand, and the convictions on the specific counts must be vacated." (*Torres, supra*, 102 Cal.App.4th at p. 1057.) According to the *Torres* court, "[t]he *Johnson* court held only that when multiple convictions are obtained in violation of section 288.5, subdivision (c) '*either* the continuous abuse conviction *or* the convictions on the specific offenses must be vacated.' " (*Ibid.*, quoting *Johnson, supra*, 28 Cal.4th p. 245.) The *Torres* court continued: "Although the court affirmed the decision of the Court of Appeal vacating the specific counts, the question of which of the alternative convictions should be reversed, was not at issue, the court therefore never reached the question of when, and under what circumstances the proscription against multiple convictions in section 288.5, subdivision (c) could be remedied instead by reversing the section 288.5 conviction. Hence, the above quoted language from the Supreme Court's opinion requires nothing more than vacation of *either* the continuous sexual abuse conviction *or* the convictions on the specific sexual offenses." (*Torres*, at p. 1057, citing *Johnson*, at p. 245.)

Following a discussion of the legislative intent behind section 288.5, the *Torres* court concluded: "[S]ection 288.5, subdivision (c) gives the prosecutor maximum flexibility to allege and prove *not only* a continuous sexual abuse count, but also specific felony offenses commensurate with the defendant's culpability, subject only to the limitation that the defendant may not be *convicted* of both continuous sexual abuse and specific felony sex offenses committed in the same period. It therefore, is also appropriate, in deciding which convictions to vacate as the remedy for a violation of the proscription against multiple convictions set forth in section 288.5, subdivision (c), that we leave appellant standing convicted of the alternative offenses that are most commensurate with his culpability." (*Torres, supra*, 102 Cal.App.4th at p. 1059.) We agree with the *Torres* court, as have several other courts since *Torres* was decided (see *People v. Wilson* (2019) 33 Cal.App.5th 559, 573-575; *People v. Rojas* (2015) 237 Cal.App.4th 1298, 1308-1309; *People v. Bautista* (2005) 129 Cal.App.4th 1431,

13

1437-1438), that a permissible remedy is one that leaves the defendant convicted of the offenses that are most commensurate with the defendant's culpability. (*Torres*, at p. 1059.)

Defendant urges us to conclude *Torres* was wrongly decided. Defendant asserts, "the *Torres* court misstated the holding of the Supreme Court on the issue of the remedy when multiple convictions result in violation of . . . section 288.5, subdivision (c)." According to defendant, the *Torres* court misconstrued the Supreme Court's holding because, in relying on certain language from *Johnson*, the *Torres* court was actually invoking the Supreme Court's recitation of the Court of Appeals' reasoning, not the Supreme Court's holding. Specifically, defendant emphasizes the language in *Johnson*, stating: "*By the Court of Appeal's reasoning*, if an accusatory pleading is improper (i.e., a count alleging violation of section 288.5 is joined, and *not*–as subdivision (c) requires–charged alternatively, with one or more counts alleging specific sexual offenses), then the multiple convictions predicated thereon cannot stand, and either the continuous abuse conviction or the convictions on the specific offenses must be vacated." (*Johnson, supra*, 28 Cal.4th p. 245, initial italics added.) Defendant asserts, "*Johnson* never adopted this reasoning of the Court of Appeal, but instead merely affirmed the judgment of the Court of Appeal dismissing the other the multiple convictions predicated on the section 288.5 offense."

Defendant may be correct that, in this portion of its opinion, the Supreme Court was restating the Court of Appeal's reasoning. (*Johnson, supra*, 28 Cal.4th at p. 245.) However, while the Supreme Court may not have clearly and explicitly adopted that reasoning, it also did not disapprove of or criticize it. In any event, we conclude that nothing in section 288.5, subdivision (c), or in *Johnson* prohibits the result reached in *Torres* nor establishes that *Torres* was wrongly decided. Beyond asserting that *Torres* misconstrued the Supreme Court's holding in *Johnson*, defendant does not offer any persuasive reasoning to support his contention that the Court of Appeal wrongly decided

14

*Torres*. Defendant has not pointed us to any statute, case law, or other authority which would establish the remedy contemplated by *Torres* exceeds the trial court's authority or is otherwise unauthorized.

The language in section 288.5, subdivision (c) is silent on the remedy where a charging violation such as that at issue here has occurred. Section 288.5, subdivision (c) does prohibit *charging* a defendant with specific acts of substantial sexual conduct or lewd and lascivious acts involving the same victim in a prosecution including a charge under section 288.5 unless the specific sexual offenses occurred outside the time period charged under section 288.5 or the specific sexual offenses are charged in the alternative. It does not, however, address the *remedy* where that proscription is violated. We decline to read into the statute an implied remedy that, where a prosecutor violates the charging proscription in section 288.5, subdivision (c) resulting in multiple convictions, because that subdivision prohibits charging the concurrent specific sexual offenses in a manner other than in the alternative, the section 288.5, subdivision (a) conviction must remain and the other convictions must be vacated. We do not find any support in section 288.5, *Johnson*, or elsewhere for the premise that this is the statutorily mandated remedy.

Thus, we are not persuaded by defendant's argument the trial court exceeded its authority in employing the remedy it did here. In support of his argument, defendant relies on case law discussing the separation of powers generally (*People v. Birks* (1998) 19 Cal.4th 108, 134) and the Legislature's broad lawmaking authority in enacting penal statutes and specifying the punishments for crimes (*People v. Dillon* (1983) 34 Cal.3d 441, 478; *People v. Schueren* (1973) 10 Cal.3d 553, 564). However, the Legislature has not exercised its lawmaking authority in setting forth a remedy for a violation of section 288.5, subdivision (c). Accordingly, in adopting the *Torres* remedy, the trial court did not usurp the role of the Legislature. Nor are we persuaded by defendant's public policy arguments against *Torres* and in favor of his proposed remedy.

15

Following *Torres*, we conclude the trial court here had the authority to elect between vacating the conviction on count 1 or those on counts 2 and 3 and, in so doing, to elect the option that leaves defendant convicted of the offense or offenses most commensurate with his culpability.  (*Torres, supra*, 102 Cal.App.4th at pp. 1057, 1059.)

Our conclusion is consistent with the legislative purpose of section 288.5, as discussed in *Torres, supra*, 102 Cal.App.4th at pages 1058 to 1061.  "The primary purpose of the Legislature in enacting section 288.5 was to evade the then existing unanimity requirement established in *People v. Van Hoek* (1988) 200 Cal.App.3d 811, disapproved in *People v. Jones* (1990) 51 Cal.3d 294, 322, which often had the effect of defeating the prosecution of offenders who committed repeated acts of sexual abuse against children over an extended period of time, by defining the section 288.5 offense in terms of a 'course of conduct.' " (*Torres*, at p. 1059.)  According to the *Torres* court, in *People v. Cortes* (1999) 71 Cal.App.4th 62, "the court explained that one of the reasons why it would not construe section 288.5, subdivision (c) as requiring the prosecution to allege the entire period during which the defendant engaged in repeated acts of sexual abuse was that ' "[a] defendant who . . . continues to perpetrate sexual abuse for a longer period of time than [the minimum] . . . required by section 288.5 is *more* culpable than a defendant who perpetrates the continued abuse for a limited time." [Citation.]  It follows that those who prolong periods of continuous abuse should be more, not less, vulnerable to additional convictions in order *to ensure that their punishment can be commensurate with their culpability*.  Indeed, by permitting prosecutors to seek additional convictions for offenses committed outside the alleged period, the Legislature . . . *clearly intended that liability reflect culpability*.' " (*Torres*, at p. 1059, second italics added, quoting *Cortes*, at p. 78; see also *People v. Alvarez,* (2002) 100 Cal.App.4th 1170, 1177-1178 ["It would be anomalous if section 288.5, adopted to prevent child molesters from evading conviction, could be used by those molesters to circumvent multiple convictions with more severe penalties and prior-strike consequences than available for a conviction under

16

section 288.5"].)  Indeed, the language in the *Torres* court's conclusion—that courts should leave defendants "standing convicted of the alternative offenses that are *most commensurate with [the defendant's] culpability*"—echoes the *Cortes* court's language quoted in *Torres* discussing the legislative purpose of section 288.5.  (*Torres*, at p. 1059, italics added; see *ibid*., quoting *Cortes*, at p. 78.)

We further conclude that, here, vacating the conviction on count 1 and leaving defendant convicted of counts 2 and 3 leaves defendant "standing convicted of the alternative offenses that are most commensurate with his culpability."  (*Torres, supra*, 102 Cal.App.4th at p. 1059.)  In considering which scenario leaves defendant standing convicted of the offenses most commensurate with his culpability, we consider the relationship between the defendant and the victim(s), the tender age of the victim in relation to the statutory criteria, the numerosity and frequency of the acts of abuse, the severity of the abuse relative to the punishment imposed under each statutory scheme, the period of time covering the abusive conduct, and other circumstances triggering victim trauma or mitigating culpability.

Here, A.D. was defendant's biological child.  The defendant had not been part of the child's life until age five, introduced first only as a family friend.  He was not a full-time father; rather, he had only weekend visitation.  Under these circumstances, defendant took advantage of a position of trust in committing these offenses against his vulnerable child.

The offenses defendant committed against A.D. occurred when A.D. was 10 years old and younger, beginning when A.D. was the tender age of seven or eight years old, far younger than the 14 year-old statutory age cutoff for violation of section 288.5.

According to A.D., defendant committed numerous, frequent acts with A.D., including touching and rubbing A.D.'s vagina with his fingers, having A.D. put defendant's penis in A.D.'s mouth, having A.D. use A.D.'s hands on defendant's penis, putting his mouth on A.D.'s vagina and licking it with his tongue, rubbing his penis on

17

A.D.'s vagina, touching A.D.'s breasts, and unsuccessfully attempting vaginal intercourse with A.D. The nature of this abuse falls near the high end of serious offenses actionable under section 288.5.

Not only did the sexual abuse occur frequently, but it took place over an extended time period of three years, well beyond the three-month provision in section 288.5.

Finally, defendant would often isolate A.D. in a shed on the property to carry out the acts of sexual abuse, enhancing A.D.'s vulnerability. Defendant's methods suggest the possibility he planned his sexual abuse of A.D.

With the trial court's choice of remedy, defendant is serving two 15-years-to-life terms for counts 2 and 3 committed against A.D. in addition to the 15-years-to-life term on count 6 for his offense against M.M. Defendant's preferred remedy would result in the maximum of an upper term of 16 years determinate on count 1 (§ 288.5, subd. (a)) in addition to the 15-years-to-life term for count 6.

Considering all relevant circumstances, we conclude the remedy employed by the trial court, in addition to being authorized, leaves defendant "standing convicted of the alternative offenses that are most commensurate with his culpability."[6] (*Torres, supra*, 102 Cal.App.4th at p. 1059.)

II

*Abstract of Judgment*

Defendant asserts errors on the abstract of judgment must be corrected. The abstract states defendant was convicted on counts 2, 3, and 6 of "Oral Copulation or Sexual Penetration with Child 10 yrs or Younger." Defendant states he was convicted of sexual penetration on count 2 and oral copulation on counts 3 and 6, and that the abstract

---

[6] Because we conclude the trial court's choice of remedy was both authorized and appropriate in this case, we need not address defendant's additional contention that the trial court's error in fashioning its remedy violated his due process rights.

18

should be corrected to indicate as much. The Attorney General concedes the abstract should be corrected.

Defendant stands convicted of three counts of violating section 288.7, subdivision (b). That section provides, in part: "Any person 18 years of age or older who engages in oral copulation or sexual penetration, as defined in Section 289, with a child who is 10 years of age or younger is guilty of a felony . . . ." (§ 288.7, subd. (b).)

The information charged defendant in counts 2, 3, and 6 with "oral copulation or sexual penetration with child 10 years old or younger, in violation of . . . section 288.7 [, subd. ](b)," and, as to counts 2 and 3, then elaborated on the specific allegation in each count. (Boldface & capitalization omitted.)

Based on the charging instrument and the statute, it is not necessarily the case that the abstract of judgment is *incorrect*. However, the verdict forms state that, as to count 2, the jury found defendant guilty of sexual penetration of A.D., as to count 3, the jury found defendant guilty of oral copulation of A.D., and as to count 6, the jury found defendant guilty of oral copulation of M.M. In light of the verdict forms, we will accept the Attorney General's concession and order the abstract of judgment amended to reflect the jury's findings.

19

DISPOSITION

The judgment is affirmed.  The trial court shall prepare an amended abstract of judgment reflecting that defendant stands convicted on count 2 of sexual penetration with a child 10 years or younger and on counts 3 and 6 of oral copulation with a child 10 years or younger.  The trial court shall forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.



_____\s\_____,
McADAM, J.*


We concur:


_____\s\_____,
MAURO, Acting P. J.


_____\s\_____,
KRAUSE, J.

---

*        Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.